**PACIFIC FURNITURE MANUFACTURING CO., Appellee,**

v.

**PREVIEW FURNITURE CORPORATION, and Eli J. Ehrlich, Appellants.**

**Appeal No. 86–787.**

United States Court of Appeals, Federal Circuit.

Sept. 10, 1986.

Lewis M. Dalgarn, of Nilsson, Robbins, Dalgarn, Berliner, Carson & Wurst, Los Angeles, Cal., argued for appellee. With him on the brief was Michael C. Schiffer, of Nilsson, Robbins, Dalgarn, Berliner, Carson & Wurst, Los Angeles, Cal. Of counsel was Francis M. Pinckney, of Richards, Shefte & Pinckney, Charlotte, N.C.

George T. Mobille, of Cushman, Darby & Cushman, Washington, D.C., argued for appellants. With him on the brief was Robert W. Adams, of Cushman, Darby & Cushman, Washington, D.C. Of counsel was Jan H. Samet, of Keziah, Gates & Samet, High Point, N.C.

Before FRIEDMAN, DAVIS and NEWMAN, Circuit Judges.

DAVIS, Circuit Judge.

Appeal from a judgment of the United States District Court for the Middle District of North Carolina holding U.S. Design Patents, Nos. Des. 258,100 (the '100 patent)[1] and Des. 258,101 (the '101 patent)[2] enforceable and not invalid under 35 U.S.C. § 103, and willfully and deliberately infringed by appellants, Preview Furniture Corporation, Furniture Marketing Specialists, Inc. (FMS),[3] and Eli J. Ehrlich,[4] (collectively called Preview). The court also awarded to Pacific Furniture Manufacturing Co. (Pacific), owner of both patents by assignment, treble compensatory damages under 35 U.S.C. § 284, and attorney fees. We affirm.

## I.

Both patents in suit are directed to upholstered armchairs comprising several essential elements: arms, a back and a seat cushion. The chairs also embody a swivel base platform upon which the chair can pivot and which is invisible to the viewer of the chair, and a box member upon which the seat cushion rests and which conceals the swivel base from view.

Appellant Preview's accused devices, Style No. 806 (which was found to infringe the '100 patent) and Style No. 807 (which was found to infringe the '101 patent), were designed by Ehrlich in January or February 1980. He was assisted by his sample manufacturer, Thomas B. Kennedy, and his furniture frame manufacturer, Roy E. White. Using Ehrlich's designs, Preview commenced marketing the accused chairs in April 1980.

On September 16, 1980, Pacific, through its California patent counsel, wrote a letter

---

1. U.S. Patent Des. 258,100 was filed on January 18, 1979 and issued to Dorothy L. Blowers on February 3, 1981.

2. U.S. Patent Des. 258,101 was filed on January 18, 1979 and issued to John W. Caldwell on February 3, 1981.

3. FMS is wholly owned, operated and controlled by Eli J. Ehrlich and is the marketing arm for Preview.

4. Eli J. Ehrlich is president and an owner of Preview.

to Ehrlich at Preview informing him that Pacific had filed applications for design patent protection of its Model 120 (the design for which became the '100 patent) and Model 150 (leading to the '101 patent) chairs. Pacific was informed that the patents were going to issue on February 3, 1981. On January 30, 1981, Pacific wrote a second letter to Ehrlich and Preview renewing its demand that the infringing activities cease forthwith.

On March 12, 1981, Pacific filed a complaint[5] for infringement of the '100 and '101 patents by Preview Furniture Corporation. Preview answered, denying the charges and asserting a counterclaim for a declaratory judgment that the '100 and '101 patents were invalid, unenforceable and not infringed by any of their products.

On or about May 17, 1983, Pacific filed a counterclaim (apparently in response to Preview's earlier counterclaim) against Preview, alleging willful and deliberate infringement of both patents and requesting treble damages and attorney fees. Preview answered denying all the allegations. After a bench trial, the District Court entered judgment on November 27, 1985,[6] holding both patents not proven invalid or unenforceable, but willfully and deliberately infringed. The District Court ordered Preview to pay a treble amount of compensatory damages owing for such infringement, plus attorney fees and expenses.

On this appeal, Preview concedes the validity and enforceability of the '100 patent. However, appellants challenge as erroneous the District Court's conclusion that the '101 patent was not proven invalid for obviousness under 35 U.S.C. § 103. Preview also contends that the District Court erred in failing to find the '101 patent unenforceable due to inequitable conduct. Lastly, Preview argues that the District Court abused its discretion in awarding treble damages and attorney fees.

5. The complaint also alleged unfair competition, but that issue was not pursued at trial.

## II.

Preview first contends that the District Court erred in failing to invalidate the '101 patent for obviousness over the combination of Pacific's prior art chair designs, Style No. 120 (which was embodied in the '100 patent) and Style No. 1536. The District Court, in its opinion, detailed numerous specific design differences between the 120 and 1536 prior art designs, respectively, and the design disclosed in the '101 patent. These findings were not disputed by Preview and are certainly not clearly erroneous. Further, at least four of the differences as found by the District Court were common to both prior art designs. That is, both the 120 chair design and the 1536 chair design differed from the '101 patent claim in that

(1) the seat in the '101 patent design chair had distinctive sewn seams which were not present in the prior art designs;

(2) the '101 patent design chair, unlike the prior art designs, had distinctive overhangs at the top of the back of the chair;

(3) the '101 patent design chair, unlike the prior art designs, had an overhang extending outwardly from the top of the arm of the chair; and

(4) the '101 patent design chair had a unique and distinctive combination of complementary pleats which appear on the arm, the back, and the seat cushion and which were not found in either of the prior art designs.

■■ To prove the invalidity of the '101 patent claim, Preview must overcome the presumed validity of the patent by submitting evidence which has proved—by clear and convincing evidence—facts which would have permitted the District Court to determine that the designs would have been obvious to one skilled in the art of designing upholstery furniture at the time the invention was made. *Gardner v. TEC Systems*, 725 F.2d 1338, 1345, 220 USPQ

6. *Pacific Furniture Manufacturing Co. v. Preview Furniture Corp.*, 626 F.Supp. 667, 228 USPQ 235 (M.D.N.C.1985). The District Court's opinion gives a more detailed statement of the facts.

777, 782–83, (Fed.Cir.), *cert. denied,* 469 U.S. 830, 105 S.Ct. 116, 83 L.Ed.2d 60 (1984); *see also Shelcore, Inc. v. Durham Industries,* 745 F.2d 621, 624, 223 USPQ 584, 586 (Fed.Cir.1984). Considering all the evidence and inferences properly drawn therefrom, we cannot say that the District Court erred in deciding that Preview failed to meet its burden of proof by clear and convincing evidence. Preview argues that the admission of Blowers, designer of both prior art chair designs, establishing that the '101 patent design was the result of an effort to give a "loose-look" to the Style 120 chair design, was strong evidence of obviousness. However, the District Court, in its proper discretion, was free to accord such weight to this evidence as it deemed proper in light of other credible evidence of record favoring Pacific. In short, we see no error in the court's determination that the '101 patent was not proven invalid.

Preview's second major contention is that Pacific's failure to disclose the prior art of the 120 and 1536 chair designs, during the prosecution of the '101 patent, violated the duty of disclosure since there was a substantial likelihood that the examiner would not have allowed the patent to issue had he been aware of these prior art designs. Consequently, Preview asserts error in the District Court's failure to hold the '101 patent unenforceable due to inequitable conduct.

" 'Inequitable conduct' requires proof by clear and convincing evidence of a threshold degree of materiality of the nondisclosed or false information." *J.P. Stevens & Co. v. Lex Tex, Ltd.,* 747 F.2d 1553, 1559, 223 USPQ 1089, 1094 (Fed.Cir.1984), *cert. denied,* —— U.S. ——, 106 S.Ct. 73, 88 L.Ed.2d 60 (1985). The District Court concluded that Preview failed to meet this burden.

▮ Preview has correctly relied on the Patent and Trademark Office standard test to show materiality. Under that test, nondisclosed references are material if there is a substantial likelihood that a reasonable examiner would have considered the omitted references important in deciding whether to allow the application for the '101 patent to issue. *J.P. Stevens,* 747 F.2d at 1559, 223 USPQ at 1094. At trial, Preview presented no direct evidence of materiality.[7] Preview urges, however, that inferences of materiality can be drawn from the record which shows that the 120 chair design was the starting point for designing the '101 chair and that both Pacific and its attorney were aware of the 120 and 1536 chair designs. The knowledge of Pacific and its attorney with respect to the prior art designs goes to intent not to materiality. That the designer created the design of the '101 patent in an attempt to "loosen" the look of the 120 chair design may be some evidence of materiality, but we do not think that this evidence established clearly and convincingly that a reasonable patent examiner would have considered the 120 chair design important in deciding to issue the '101 patent. Moreover, we are not persuaded that the mere examination of the 120 and 1536 designs provided the required proof of materiality because, as stated *supra,* there exist significant unobvious differences between the prior art designs and the design of the '101 patent.[8] The District Court did not err in finding a lack of inequitable conduct.

▮ Finally, on the basis of the detailed and well-reasoned opinion of the District Court, 626 F.Supp at 676–78, 228 USPQ at 241–42, we agree that the willful and deliberate infringement of the '100 and '101 patents entitles Pacific to tripled compensatory damages under 35 U.S.C. § 284.[9]

7. "Inequitable conduct" also requires proof of a threshold of intent. *J.P. Stevens,* 747 F.2d at 1560, 223 USPQ at 1092. However, since appellants have failed to meet their burden with respect to materiality, it is not necessary that we consider the requirement of intent.

8. In addition, the application resulting in the '100 patent (and embodying the 120 claim) was already before the same examiner who was considering the application leading to the '101 patent.

9. The fact that Preview may have started its infringement before the patents issued (or be-

Also, on the basis of that opinion, 626 F.Supp. at 679–80, 228 USPQ at 243–44, we agree that this is an exceptional case warranting reasonable attorney fees under 35 U.S.C. § 285 in the District Court.

AFFIRMED.

fore appellants were aware of the patents) does not bar an award of increased damages or attor-

ney fees. *Shiley, Inc. v. Bentley Laboratories, Inc.,* 794 F.2d 1561, 1568 (Fed.Cir.1986).