**L.A. GEAR, INC., Plaintiff/Cross-Appellant,**

**v.**

**THOM McAN SHOE COMPANY and Melville Corporation and Pagoda Trading Company, Inc., Defendants-Appellants.**

Nos. 89-1488, 89-1497, 91-1104 and 91-1105.

United States Court of Appeals, Federal Circuit.

Feb. 16, 1993.

Rehearing Denied; Suggestion for Rehearing In Banc Declined April 13, 1993.

---

Robert A. Horowitz, Law Office of Kelley, Drye & Warren, Stamford, CT, argued, for plaintiff, cross-appellant, L.A. Gear, Inc. With him on the brief was Mark S. Gregory.

Doreen L. Costa, Law Office of Brumbaugh, Graves, Donohue & Raymond New York City, argued, for defendants-appellants, Tom McAn Shoe Co. and Melville Corp. With her on the brief were Joseph D. Garon and Marina T. Larson.

William M. Borchard, Law Office of Cowan, Liebowitz & Latman, P.C., New York City, argued, for defendant-appellant, Pagoda Trading Co., Inc. Of counsel was Alasdair J. McMullan.

Before NEWMAN, MAYER, and PLAGER, Circuit Judges.

PAULINE NEWMAN, Circuit Judge.

Thom McAn Shoe Company, the Melville Corporation, and Pagoda Trading Company, Inc. (together "Appellants") appeal the decision of the United States District Court for the Southern District of New York,[1] holding Melville and its division Thom McAn (together "Melville") liable for design patent infringement, and holding Ap-

1. *L.A. Gear, Inc. v. Thom McAn Shoe Company,* No. 88 Civ. 6444, 1989 WL 282850 (S.D.N.Y. September 5, 1990) (Judgment); (July 25, 1989) (Order); (April 19, 1989) (Judgment).

pellants liable for unfair competition based on trade dress infringement in terms of § 43(a) of the Lanham Act and the New York State unfair competition law. The district court enjoined further infringement and awarded damages under the Lanham Act. The court declined to award enhanced damages or attorney fees.

We affirm the ruling of liability for patent infringement as to four shoe models, and reverse the ruling that infringement was not willful. We reverse the ruling of liability under § 43(a) of the Lanham Act as to six shoe models.

### Background

In 1987 L.A. Gear designed a line of women's and girls' athletic shoes identified as the L.A. Gear's "Hot Shots" shoes. United States Design Patent No. 299,081 was granted on December 27, 1988 ("the '081 patent"). Figure 4 of the patent is shown:

Although color is not part of the patented design, the colors used on these shoes and their placement are part of the trade dress for which L.A. Gear claims protection from unfair competition.

In the summer and fall of 1987 L.A. Gear exhibited the Hot Shots line of shoes to retailers at trade shows, and announced that these shoes had been selected as L.A. Gear's "hero" or featured shoe line, on which major promotion and advertising would be focused for the ensuing year. There was evidence at trial that L.A. Gear concentrated over seventy percent of its advertising expenditures on these shoes, including television commercials, billboards, and advertisements in magazines and newspapers, at a cost of over five million dollars in 1988. The district court found that the advertising was in color and prominently featured the design of the shoe. A L.A. Gear Hot Shots shoe is pictured:

This line of shoes was a commercial success, with four million pairs sold by February, 1989. The sales volume was significantly higher than for any of L.A. Gear's other styles. The shoes were sold primarily in department stores, sporting goods stores, and athletic shoe stores, at a retail price ranging from $35 to $60. L.A. Gear testified that it had a policy against sale of its shoes in discount stores.

Melville Corporation sells shoes in discount stores, through its divisions Thom McAn and Meldisco. Thom McAn sells shoes in its own stores, and Meldisco sells shoes in K Mart stores. The Pagoda Trading Company arranges for the manufacture of shoes in the Far East and their importation into the United States.

The district court found that in early 1988 the Appellants, observing the success of L.A. Gear's Hot Shots design, decided to copy it. Designers employed by the Appellants used the L.A. Gear shoes as models for the shoes accused of infringement: a women's high top shoe sold in Thom McAn stores with the trademark BALLOONS; high and low top women's and girls' models sold in K Mart stores with the trademark AEROBIX; and a women's low top shoe sold in K Mart stores with the trademark MacGREGOR. (Additional models carrying the marks JUST KIDDING and SHOOTERS were stated to have been discovered after trial, and are not included in

our decision.) All of the trademarks are displayed in the same location on the shoe, in the same color-coordinated style, as the L.A. GEAR trademark. Acknowledging the presence of these trademarks, the district court found that six models of Appellants' shoes were "strikingly similar" to L.A. Gear's Hot Shots design, and that the conditions of unfair competition were met. These and related issues are raised on this appeal.

### I

### THE DESIGN PATENT

35 U.S.C. § 171 provides that a patent may be obtained for the ornamental design of an article of manufacture.

> **35 U.S.C. § 171.** Whoever invents any new, original and ornamental design for an article of manufacture may obtain a patent therefor, subject to the conditions and requirements of this title. . . .

A patented design is ordinarily claimed "as shown", that is, by its drawing.

> **37 C.F.R. § 1.153(a).** The title of the design must designate the particular article. No description, other than a reference to the drawing, is ordinarily required. The claim shall be in formal

terms to the ornamental design for the article (specifying name) as shown, or as shown and described. More than one claim is neither required nor permitted.

L.A. Gear charged only Melville with patent infringement, since Pagoda had ceased importation before the issuance of the '081 patent. Melville was held liable for patent infringement with respect to four models of shoes: a women's high top BALLOONS shoe (model no. 78191); a women's high top AEROBIX shoe (model no. 78505); and two girls' high top AEROBIX shoes (models no. 71878 and 76878).

Melville raised defenses of patent invalidity and non-infringement, on the following premises:

### Functionality

▪ Melville asserted at trial, and argues on appeal, that the design of the '081 patent is "functional" and that the patent is therefore invalid. Invalidity due to functionality is an affirmative defense to a claim of infringement of a design patent, and must be proved by the party asserting the defense. Applying the presumption of validity, 35 U.S.C. § 282, invalidity of a design patent must be established by clear and convincing evidence.

▪ A design patent is directed to the appearance of an article of manufacture. An article of manufacture necessarily serves a utilitarian purpose, and the design of a useful article is deemed to be functional when the appearance of the claimed design is "dictated by" the use or purpose of the article. *In re Carletti*, 328 F.2d 1020, 1022, 140 USPQ 653, 654 (CCPA 1964); *Power Controls Corp. v. Hybrinetics, Inc.*, 806 F.2d 234, 238, 231 USPQ 774, 777 (Fed. Cir.1986) (patented design must be primarily ornamental). If the particular design is essential to the use of the article, it can not be the subject of a design patent.

▪ Melville argues that each element comprising the '081 design has a utilitarian purpose: that is, the delta wing provides support for the foot and reinforces the shoelace eyelets; the mesh on the side of the shoe also provides support; the moustache at the back of the shoe provides cushioning for the Achilles tendon and rein-

forcement for the rear of the shoe; and the position of each of these elements on the shoe is due to its function. However, the utility of each of the various elements that comprise the design is not the relevant inquiry with respect to a design patent. In determining whether a design is primarily functional or primarily ornamental the claimed design is viewed in its entirety, for the ultimate question is not the functional or decorative aspect of each separate feature, but the overall appearance of the article, in determining whether the claimed design is dictated by the utilitarian purpose of the article. *Lee v. Dayton–Hudson Corp.*, 838 F.2d 1186, 1189, 5 USPQ2d 1625, 1627 (Fed.Cir.1988). *See Gorham Co. v. White*, 81 U.S. (14 Wall.) 511, 530, 20 L.Ed. 731 (1872).

That elements of the '081 design, such as the delta wing or the side mesh, also provide support for the foot does not mean that the specific design of each element, and the combination of these elements into the patented design, is dictated by primarily functional considerations. The elements of the design may indeed serve a utilitarian purpose, but it is the ornamental aspect that is the basis of the design patent. *Carletti*, 328 F.2d at 1022, 140 USPQ at 654.

▪ The district court remarked on the existence of a myriad of athletic shoe designs in which each of the functions identified by Melville as performed by the '081 design elements was achieved in a way other than by the design of the '081 patent. When there are several ways to achieve the function of an article of manufacture, the design of the article is more likely to serve a primarily ornamental purpose. *See Avia Group International, Inc. v. L.A. Gear California, Inc.*, 853 F.2d 1557, 1563, 7 USPQ2d 1548, 1553 (Fed.Cir.1988). It was not disputed that there were other ways of designing athletic shoes to perform the functions of the elements of the '081 design. In today's marketplace, the primacy of appearance in the design of shoes can not be ignored when analyzing functionality.

▪ The district court found that the '081 design was primarily ornamental,

and that the patent was not invalid on the ground of functionality. Clear error has not been shown in this ruling, which is affirmed.

## Obviousness

■ A patented design must meet the substantive criteria of patentability, including non-obviousness in accordance with the law of 35 U.S.C. § 103. *See* 35 U.S.C. § 171 ("The provisions of this title relating to patents for inventions shall apply to patents for designs, except as otherwise provided.").

■■ In applying the law of § 103 to the particular facts pertinent to the patented design, obviousness *vel non* is reviewed from the viewpoint of a designer of ordinary skill or capability in the field to which the design pertains. *In re Nalbandian*, 661 F.2d 1214, 1216, 211 USPQ 782, 784 (CCPA 1981). As with utility patents, obviousness is not determined as if the designer had hindsight knowledge of the patented design.

■ When the patented design is a combination of selected elements in the prior art, a holding of obviousness requires that there be some teaching or suggestion whereby it would have been obvious to a designer of ordinary skill to make the particular selection and combination made by the patentee. *In re Cho*, 813 F.2d 378, 382, 1 USPQ2d 1662, 1663–64 (Fed.Cir.1987). The first step in the analysis, when the subject is design, is whether there is "a reference to something in existence, the design characteristics of which are basically the same as the claimed design, in order to support a holding of obviousness". *In re Rosen*, 673 F.2d 388, 391, 213 USPQ 347, 350 (CCPA 1982); *In re Jennings*, 182 F.2d 207, 208, 86 USPQ 68, 70 (CCPA 1950). Thus not only the individual elements, but the ornamental quality of the combination must be suggested in the prior art. *Rosen, id.* at 390, 213 USPQ at 349.

■ Melville offered twenty-two references that were asserted to show or suggest various features of the '081 design, and argues that the '081 design is readily reconstructed from elements found in the prior art. The district court found that all of the elements of the design of the '081 patent were known, but that these particular elements had not previously been combined in a single shoe design. A reconstruction of known elements does not invalidate a design patent, absent some basis whereby a designer of ordinary skill would be led to create this particular design. The district court concluded that there was no teaching or suggestion in the prior art of the appearance of the claimed design as a visual whole. We discern no error in this conclusion or the premises on which it rests. The undisputed commercial success of the patented design, and Appellants' copying thereof, are also relevant to analysis of the obviousness of a design. *Rosen*, 673 F.2d at 391 n. 6, 213 USPQ at 350 n. 6.

The district court's holding that the '081 design patent is not invalid under 35 U.S.C. § 103 is affirmed.

## Infringement

■ In 35 U.S.C. § 289 infringement is defined as unauthorized manufacture or sale of "the patented design, or any colorable imitation thereof". Design patent infringement is a question of fact, to be proven by a preponderance of the evidence. *Braun Inc. v. Dynamics Corp. of America*, 975 F.2d 815, 819, 24 USPQ2d 1121, 1124 (Fed.Cir.1992).

■ Design patent infringement requires a showing that the accused design is substantially the same as the claimed design. The criterion is deception of the ordinary observer, such that one design would be confused with the other:

> We hold, therefore, that if, in the eye of an ordinary observer, giving such attention as a purchaser usually gives, two designs are substantially the same, if the resemblance is such as to deceive such an observer, inducing him to purchase one supposing it to be the other, the first one patented is infringed by the other.

*Gorham v. White*, 81 U.S. (14 Wall.) at 528, 20 L.Ed. 731; *Lee v. Dayton–Hudson*, 838 F.2d at 1187, 5 USPQ2d at 1626.

In conducting such analysis the patented design is viewed in its entirety, as it is claimed. As for other patented inventions, reference is made to the prior art and the prosecution history in order to give appropriate weight to the factors that contributed to patentability. *See Winner International Corp. v. Wolo Manufacturing Corp.*, 905 F.2d 375, 376, 15 USPQ2d 1076, 1077 (Fed.Cir.1990). While the accused design must appropriate the novelty that distinguished the patented design from the prior art, *see Litton Systems, Inc. v. Whirlpool Corp.*, 728 F.2d 1423, 1444, 221 USPQ 97, 109 (Fed.Cir.1984), the ultimate question requires determining whether "the effect of the whole design [is] substantially the same". *Gorham v. White*, 81 U.S. at 530, 20 L.Ed. 731. *See Shelcore, Inc. v. Durham Industries, Inc.*, 745 F.2d 621, 628 n. 16, 223 USPQ 584, 590 n. 17 (Fed.Cir.1984) (the requirements of *Gorham v. White* and *Litton v. Whirlpool* are conjunctive).

The district court found that the designs of four models of Melville's accused shoes were "almost a direct copy" of the '081 design. Pictured is the BALLOONS model no. 78191:

Substantial similarity is not disputed; indeed, copying is admitted. However, Melville complains that the district court's treatment of the issue of patent infringement was "cursory", in that the court referred, in the part of its opinion relating to patent infringement, to its findings on likelihood of confusion relative to the trade dress issue.

In discussing trade dress, the district court had found that the L.A. Gear shoes and the accused shoes were substantially similar in design, such that the ordinary observer would confuse one with the other. Although design patent analysis requires comparison of the claimed design with the accused articles, Melville has not argued that the patent drawing differs from the embodiment in the L.A. Gear shoe, and has offered no reason why the finding of substantial similarity between the actual shoes was not applicable to the infringement analysis. When the patented design and the design of the article sold by the patentee are substantially the same, it is not error to compare the patentee's and

**1126**

the accused articles directly, *Lee v. Dayton–Hudson Corp.*, 838 F.2d at 1189, 5 USPQ2d at 1627; indeed, such comparison may facilitate application of the *Gorham* criterion of whether an ordinary purchaser would be deceived into thinking that one were the other. It was in this context that the district court analyzed likelihood of confusion. No methodological error has been shown in this analysis.

■■ Design patent infringement relates solely to the patented design, and does not require proof of unfair competition in the marketplace, *see Unette Corp. v. Unit Pack Co.*, 785 F.2d 1026, 1029, 228 USPQ 933, 934 (Fed.Cir.1986), or allow of avoidance of infringement by labelling. The district court did not confuse the criteria relevant to these causes of action. Although Melville argues specific differences in features of the four models that were found to infringe the '081 patent, the district court found that "the placement of all the major design elements is the same, creating the same distinctive overall look", and recognized that the novelty resided in the overall appearance of the combination. The court found, in the terms of *Gorham v. White*, that the four infringing models were confusingly similar to the patented design, as viewed by an ordinary observer.

Reversible error has not been shown. The district court's holding of design patent infringement is affirmed.

### Willfulness of Infringement

■ The district court concluded that Melville's patent infringement was not willful, and denied L.A. Gear's request for enhanced damages and attorney fees. Willfulness of infringement is a question of fact, and the district court's finding thereon shall be sustained unless it is clearly in error. *Rite–Hite Corp. v. Kelley Co.*, 819 F.2d 1120, 1126, 2 USPQ2d 1915, 1919 (Fed. Cir.1987); *Shatterproof Glass Corp. v. Libbey–Owens Ford Co.*, 758 F.2d 613, 628, 225 USPQ 634, 644 (Fed.Cir.), *cert. dismissed*, 474 U.S. 976, 106 S.Ct. 340, 88 L.Ed.2d 326 (1985).

■ Melville relied on its counsel's obligations under Rule 11[2] to support its assertion that it had a good faith belief in the invalidity and unenforceability of the '081 patent. L.A. Gear points out, correctly, that a defensive pleading of invalidity or unenforceability may pass muster under Rule 11, yet not provide adequate defense to the charge of willful infringement. Indeed, in this case the pled defense of unenforceability was not pursued at trial; and the only ground asserted for patent invalidity (*i.e.*, functionality) did not present a close question of fact or law.

■ Melville introduced no evidence of whether it obtained an opinion of counsel that the '081 patent was not valid or not infringed, or any other support for a good faith belief that it was entitled to perform the infringing acts. Although a party to litigation may indeed withhold disclosure of the advice given by its counsel, as a privileged communication, it will not be presumed that such withheld advice was favorable to the party's position. We have held that the assertion of privilege with respect to infringement and validity opinions of counsel may support the drawing of adverse inferences. *See Kloster Speedsteel AB v. Crucible, Inc.*, 793 F.2d 1565, 1580, 230 USPQ 81, 91 (Fed.Cir.), *modified in part*, 231 USPQ 160 (Fed.Cir.1986), *cert. denied*, 479 U.S. 1034, 107 S.Ct. 882, 93 L.Ed.2d 836 (1987) (the accused infringer's silence as to the existence of an opinion of counsel contributed, with other factors, to the ruling that infringement was willful).

■ Melville presented no evidence to counteract the evidence of copying of the patented design. Indeed, Melville admitted copying, offering as its only justification the proposition that copying is prevalent in

---

2. **Fed.R.Civ.P. 11.**
   Every pleading, motion, and other paper of a party represented by an attorney shall be signed by at least one attorney of record.... The signature of an attorney or party constitutes a certificate by the signer that the signer has read the pleading, motion or other paper; that to the best of the signer's knowledge, information, and belief formed after reasonable inquiry it is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law, and that it is not interposed for any improper purpose....

the fashion industry, an issue not relevant to patent infringement. The '081 patent issued several months after the complaint for unfair competition under § 43(a) was filed by L.A. Gear. L.A. Gear warned Melville of the impending issuance of the patent. In *Avia Group*, 853 F.2d at 1566–67, 7 USPQ2d at 1555–56, the defendant was given similar warning of impending patent issuance, yet continued the accused activities after patent issuance. *See Pacific Furniture Mfg. Co. v. Preview Furniture Corp.*, 800 F.2d 1111, 1114–15 n. 9, 231 USPQ 67, 69 n. 9 (Fed.Cir.1986) (fact that infringement started before patent issued does not bar award of increased damages). The law imposes an affirmative duty of due care to avoid infringement of the known patent rights of another. *See Underwater Devices, Inc. v. Morrison–Knudsen Co.*, 717 F.2d 1380, 1389–90, 219 USPQ 569, 576–77 (Fed.Cir.1983).

In *Avia Group*, as here, the accused infringer presented no probative evidence of a good faith belief in non-infringement. As in *Avia Group*, Melville's deliberate copying was strong evidence of willful infringement, without any exculpatory evidence to balance the weight. Indeed, the factual situations are not distinguishable on the issue of willfulness. Principles of *stare decisis* require similar rulings on similar facts, and thus it was error to fail to follow *Avia Group*.

The district court's ruling that Melville's infringement was not willful is reversed.

### Damages

The district court had assessed damages based on trade dress infringement, and did not assess separate damages for patent infringement. In view of our holding that § 43(a) has not been violated, *see* Part II *infra*, on remand the district court shall assess damages based on patent infringement.

The district court had measured damages in accordance with § 43(a) of the Lanham Act which, like § 289 of the Patent Act,[3] provides for recovery of the infringer's total profits. To facilitate that determination on remand, we have reviewed L.A. Gear's objections to the district court's accounting methodology. The question is whether Melville was entitled to deduct, in calculating its net profit, certain payments made by Melville to K Mart. The court held that since K Mart was not a party to this litigation, Melville could deduct the sums that it paid to K Mart as K Mart's profit on the sale of the infringing shoes.

L.A. Gear states, without contradiction, that it did not join K Mart as a party to this suit because of requests and representations from both Melville and K Mart, stating that Melville could provide complete recompense to L.A. Gear. Melville stated that it was obligated to indemnify K Mart for patent and trademark infringement and that it would serve no legitimate purpose to join K Mart as a party. K Mart threatened to seek Rule 11 sanctions should L.A. Gear join K Mart despite these assurances that Melville could provide any and all relief. L.A. Gear did not join K Mart as a party. Melville now asserts that because K Mart was not a party, L.A. Gear can not recover any sums attributed to K Mart's profits, and therefore that Melville can deduct from its gross profits the sums it paid to K Mart.

The representations here involved were made by lawyers in the context of litigation. They are not asserted to be puffery or posturing or negotiating ploys, or that they were not expected to be believed. The record contains relevant correspondence, including the indemnification contract be-

---

3. **35 U.S.C. § 289.**

   Whoever during the term of a patent for a design, without license of the owner, (1) applies the patented design, or any colorable imitation thereof, to any article of manufacture for the purpose of sale, or (2) sells or exposes for sale any article of manufacture to which such design or colorable imitation has been applied shall be liable to the owner to the extent of his total profit, but not less than $250, recoverable in any United States district court having jurisdiction of the parties.

   Nothing in this section shall prevent, lessen, or impeach any other remedy which an owner of an infringed patent has under the provisions of this title, but he shall not twice recover the profit made from the infringement.

tween Melville and K Mart. Actions induced by attorney representations can not be disclaimed by their instigator. Reliance by L.A. Gear was sought and obtained, and was not unreasonable. Having induced reliance, Melville can not now renounce the consequences.

The only issue raised with respect to the measure of damages due to K Mart's activities pertains to the deductibility of the amounts that Melville paid to K Mart. These amounts shall not be deducted by Melville in its accounting of profits, if recovery is calculated under 35 U.S.C. § 289.

L.A. Gear's choice of remedy for infringement, and the amount of recovery, shall be determined upon remand.

### Attorney Fees

■ Attorney fees in patent cases may be awarded in "exceptional cases". 35 U.S.C. § 285. Willfulness of infringement is a sufficient basis for finding a case exceptional, *S.C. Johnson & Son, Inc. v. Carter–Wallace, Inc.*, 781 F.2d 198, 201, 228 USPQ 367, 369 (Fed.Cir.1986), although not every exceptional case warrants the award of attorney fees. *Id.*

■ Whether a case is exceptional is a factual determination, and is reviewed for clear error. *See Reactive Metals and Alloys Corp. v. ESM, Inc.*, 769 F.2d 1578, 1582–83, 226 USPQ 821, 824 (Fed.Cir.1985). Although the district court found that this case was not exceptional, our determination that Melville's patent infringement was willful has changed the factual premises.

The trial judge is in the best position to weigh the factors "that may contribute to a fair allocation of the burdens of litigation as between winner and loser", *S.C. John-*

*son*, 781 F.2d at 201, 228 USPQ at 369, in view of the entirety of the litigation circumstances. We remand to the district court for redetermination of the issue of attorney fees.

### II

### UNFAIR COMPETITION— TRADE DRESS

The issue was whether Appellants had violated § 43(a) of the Lanham Act, 15 U.S.C. § 1125(a),[4] based on the appearance trade dress of certain models of Appellants shoes: the four models that were found to have infringed the '081 patent, and two additional models, *viz.* a women's low top AEROBIX shoe model no. 79404 and a women's low top MacGREGOR shoe model no. 16816. The district court held that these six shoe models misappropriated the trade dress of L.A. Gear's Hot Shots shoes. The court found that despite the relatively short time that the L.A. Gear shoes had been on the market, the Hot Shots design had acquired secondary meaning in that consumers had come to recognize the design as the product of L.A. Gear. The court held that there was a likelihood that consumers would be confused as to the source of the Appellants' shoes or as to the relationship between the sources of the shoes.

The protection of trade dress is of common law origin. It is based upon recognition that the packaging of goods can serve as an indicator of source, and that similar packaging may confuse, mislead, or deceive the consumer. *See generally* 1 T. McCarthy, *Trademarks and Unfair Competition*, § 8.1 (2d ed. 1984). The assorted

---

4. **15 U.S.C. § 1125. False designations of origin and false descriptions forbidden**

(a) Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which—

(1) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or

approval of his or her goods, services, or commercial activities by another person, or

(2) in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities, shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

Section 43(a) as amended by Trademark Law Revision Act, Pub.L. 100–667, 102 Stat. 3935 (1988).

legal theories that have arisen in the development of the law of trade dress have been summarized as follows:

> Attempts to incorporate protection for a product's overall design or appearance into § 43(a) have come under a variety of guises. Some courts have found an unregistered trademark in the product's trade dress, overall design, combination of features, or appearance. Others simply find that copying a product's overall trade dress or design is unfair competition. Still others have found such copying to be trade dress infringement without attempting to link it to trademark infringement or designating it a sub-category of unfair competition.

*American Greetings Corp. v. Dan–Dee Imports, Inc.*, 807 F.2d 1136, 1140 n. 2, 1 USPQ2d 1001, 1004 n. 2 (3d Cir.1986) (citations omitted).

■■■■ Trade dress protection is not limited to the exterior packaging of a product, for "the design of a product itself may function as its packaging, serving to distinguish it from other products, and hence be protectable trade dress· under § 43(a)". *Wallace International Silversmiths, Inc. v. Godinger Silver Art Co.*, 916 F.2d 76, 78–79, 16 USPQ2d 1555, 1557 (2d Cir. 1990),[5] *cert. denied*, — U.S. —, 111 S.Ct. 1622, 113 L.Ed.2d 720 (1991). In *Stormy Clime, Ltd. v. Progroup, Inc.*, 809 F.2d 971, 974, 1 USPQ2d 2026, 2028 (2d Cir.1987), the court explained that trade dress of a product "involves the total image of a product and may include features such as size, shape, color or color combinations, texture, [or] graphics" (quoting *John H. Harland Co. v. Clarke Checks, Inc.*, 711 F.2d 966, 980 (11th Cir.1983)). Trade dress is thus viewed as the overall combination and arrangement of design elements into the total image by which the product is perceived by the consuming public.

The protection of trade dress has been liberally construed for, as discussed in *LeSportsac, Inc. v. K Mart Corp.*, 754 F.2d

71, 77, 225 USPQ 654, 658 (2d Cir.1985), "[t]rade dress associated with a product that has accumulated goodwill … will almost always be 'an important ingredient' in the 'salability' of the product". The Second Circuit has recognized that trade dress, while partaking of the attributes of a trademark, is particularly concerned with product presentation: its "total image".

Appellants argue that L.A. Gear's Hot Shots shoe design is not protectable under § 43(a) because it is functional, because it lacks secondary meaning, and because the labelling on the shoes makes confusion unlikely.

### Functionality

■■■ Appellants state that the design of L.A. Gear's Hot Shots shoes is utilitarian and not ornamental, and also that the design, if deemed ornamental, is "aesthetically functional". Functionality of trade dress must be proved by the party asserting the defense. *LeSportsac*, 754 F.2d at 76, 225 USPQ at 657.

■■■ Applying Second Circuit law as we perceive it in this evolving area, an action for unfair competition under § 43(a) will not lie if the product design is essential to the use of the device, and not primarily directed to its appearance. *Stormy Clime*, 809 F.2d at 977, 1 USPQ2d at 2030. *See Inwood Laboratories, Inc. v. Ives Laboratories, Inc.*, 456 U.S. 844, 850 n. 10, 102 S.Ct. 2182, 2187 n. 10, 72 L.Ed.2d 606, 613 n. 10, 214 USPQ 1, 4 n. 10 (1982) (defining functionality as essential to the use or purpose of the article or affecting its cost or quality). If products having the same utility can not be made without duplicating the design, the product design is deemed essential to the function and is not protectable as a matter of trade dress. The court explained in *Warner Bros. Inc. v. Gay Toys, Inc.*, 724 F.2d 327, 331 (2d Cir.1983) that "[a] design feature of a particular article is 'essential' only if the feature is dictated by

---

**5.** Since unfair competition issues are not within the Federal Circuit's exclusive jurisdiction, we apply the discernable precedent of the regional circuit, *see Cicena, Ltd. v. Columbia Telecommunications Group*, 900 F.2d 1546, 1548, 14

USPQ2d 1401, 1403 (Fed.Cir.1990), in order to avoid placing an unnecessary burden on trial courts or creating an opportunity for appellate forum shopping by generating a separate body of substantive or procedural law.

the functions to be performed; a feature that merely accommodates a useful function is not enough". *See LeSportsac*, 754 F.2d at 77, 225 USPQ at 658.

The Second Circuit has narrowed or rejected, depending on the particular case, the theory of aesthetic functionality as stated in *Pagliero v. Wallace China Co.*, 198 F.2d 339, 95 USPQ 45 (9th Cir.1952). In *Pagliero* the Ninth Circuit explained that an ornamental design may be excluded from the protection of § 43(a) when the design is "an important ingredient in the commercial success" of the product. *Id.* at 343, 95 USPQ at 48. The *Pagliero* court remarked that an attractive design "satisfies a demand for the aesthetic", and that free competition thus requires imitation. *Id.* at 343–44, 95 USPQ at 49. The Second Circuit explained in *Wallace International* that "the *Pagliero* test discourages both originators and later competitors from developing pleasing designs". 916 F.2d at 80, 16 USPQ2d at 1558. The court stated, however, that to merit trade dress protection the ornamental feature must not hinder competition by limiting the range of alternative designs, citing with approval the Third Restatement of the Law, Unfair Competition (Tentative Draft No. 2), Ch. 3, § 17(c) at 126–27 (1990). *Wallace International*, 916 F.2d at 81, 16 USPQ2d at 1559.

■■■ The district court observed that many samples of athletic shoes were in evidence that did not embody the Hot Shots design, including athletic shoes presenting the same general fashion impression. It was apparent that athletic shoes could be made without the Hot Shots dress. The court rejected the argument that copying was necessary in order to compete effectively because the Hot Shots shoes were the latest fad. We discern no clear error in the district court's ruling that L.A. Gear's design of the Hot Shots met the criteria of non-functionality.

### Secondary Meaning

■■■ Trade dress for which protection is sought under § 43(a) must serve as an indication of origin or source, either by virtue of inherent distinctiveness, or by secondary meaning acquired through use. *See Two Pesos, Inc. v. Taco Cabana, Inc.,* —— U.S. ——, ——, 112 S.Ct. 2753, 2761, 120 L.Ed.2d 615, 628–29, 23 USPQ2d 1081, 1086 (1992) (when a trade dress is inherently distinctive, a showing of secondary meaning is not required in order to protect that dress under § 43(a)). The district court found that L.A. Gear's Hot Shots design had acquired secondary meaning during the period from its introduction in December 1987 to the time infringement began in May 1988. Appellants argue that this period of time was too short for the acquisition of secondary meaning.

The effect of mass exposure achievable with today's communications media can not be ignored in determination of secondary meaning. Fashion items take readily to development of secondary meaning upon mass media promotion, for the fashion status of the source is often part of the commercial value of fashion items. L.A. Gear's advertising and promotion were extensive, and public demand for this design was shown, by sales figures, to have been rapidly achieved. *See McGregor–Doniger, Inc. v. Drizzle Inc.*, 599 F.2d 1126, 1132, 1133 n. 4, 202 USPQ 81, 88 n. 4 (2d Cir. 1979) (considering extent of advertising in determining whether secondary meaning had been established); *Harlequin Enterprises Ltd. v. Gulf & Western Corp.*, 644 F.2d 946, 949 n. 1, 210 USPQ 1, 3 n. 1 (2d Cir.1981) (considering sales success); *cf. American Footwear Corp. v. General Footwear Co.*, 609 F.2d 655, 663, 204 USPQ 609, 615–16 (2d Cir.1979) (extensive advertising alone does not resolve the issue).

On this fact-dependent question, we discern no clear error in the district court's finding that secondary meaning had been established. It is thus unnecessary to consider the alternative question of inherent distinctiveness, as discussed in *Two Pesos*.

### Likelihood of Confusion

#### A

■■■ Violation of § 43(a) requires, by statute, that there be a likelihood of confusion, mistake, or deception. "Similarity in

overall appearance alone cannot establish source confusion *as a matter of law."* *Coach Leatherware Co. v. AnnTaylor, Inc.,* 933 F.2d 162, 169, 18 USPQ2d 1907, 1913 (2nd Cir.1991). *See Centaur Communications, Ltd. v. A/S/M Communications, Inc.,* 830 F.2d 1217, 1220, 4 USPQ2d 1541, 1543 (2d Cir.1987) (purpose of § 43(a) is to prevent consumer confusion as to a product's source). If likelihood of confusion is avoided, copying of trade dress can not be prevented under § 43(a).

■ The right to copy unpatented and uncopyrighted designs of articles of manufacture was stated in *Sears, Roebuck & Co. v. Stiffel Co.,* 376 U.S. 225, 84 S.Ct. 784, 11 L.Ed.2d 661, 140 USPQ 524 (1964), *reh'g denied,* 376 U.S. 973, 84 S.Ct. 1131, 12 L.Ed.2d 87 (1964) and *Compco Corp. v. Day–Brite Lighting, Inc.,* 376 U.S. 234, 84 S.Ct. 779, 11 L.Ed.2d 669, 140 USPQ 528 (1964), *reh'g denied,* 377 U.S. 913, 84 S.Ct. 1162, 12 L.Ed.2d 183 (1964). The evolution of state and federal laws of unfair competition had led some commentators to criticize the reach of *Sears* and *Compco,* as the Court remarked in *Bonito Boats, Inc. v. Thunder Craft Boats, Inc.,* 489 U.S. 141, 154, 109 S.Ct. 971, 979, 103 L.Ed.2d 118, 136, 9 USPQ2d 1847, 1853 (1989) ("The preemptive sweep of our decisions in *Sears* and *Compco* has been the subject of heated scholarly and judicial debate"). However, the Court in *Bonito Boats* reaffirmed the principle of *Sears* and *Compco,* and reiterated that the public has the right to copy the design of goods that are unprotected by patent or copyright, absent consumer confusion or deception. The Court quoted *Crescent Tool Co. v. Kilborn & Bishop Co.,* 247 F. 299, 301 (2d Cir.1917) (L. Hand, J.), as follows:

> [T]he plaintiff has the right not to lose his customers through false representations that those are his wares which in fact are not, but he may not monopolize any design or pattern, however trifling. The defendant, on the other hand, may copy plaintiff's goods slavishly down to the minutest detail: but he may not represent himself as the plaintiff in their sale.

*Bonito Boats,* 489 U.S. at 157, 109 S.Ct. at 981, 103 L.Ed.2d at 139, 9 USPQ2d at 1855.

The Court thus reaffirmed that when not protected by patent or copyright, even distinctive product designs can not be absolutely shielded from copying. In *Bristol–Myers Squibb Co. v. McNeil–P.P.C., Inc.,* 973 F.2d 1033, 24 USPQ2d 1161 (2d Cir. 1992), the Second Circuit pointed out that designs that are a trademark may also be protected:

> We do not mean to intimate that the distinctive elements of any trade dress may be freely appropriated as long as the junior user clearly identifies the source of the goods. In many cases, the distinctive elements of a trade dress may themselves be eligible for trademark protection.

973 F.2d at 1047, 24 USPQ2d at 1171.

L.A. Gear argues that *Sears, Compco,* and *Bonito Boats* are limited to issues of preemption of state law. These cases indeed arose on issues of state law of unfair competition. However, their pronouncements purport to be of far greater reach, for in each case the Court discussed and sought to balance, in the public interest, the domains of patent and other forms of protection of intellectual property. The 1988 amendment of § 43(a) codified in federal law the evolving common law of unfair competition with respect to trade dress, and "filled an important gap in federal unfair competition law." Senate Rep. No. 515, 100th Cong., 2d Sess. 40–41 (1988), *reprinted in* 1988 U.S.C.C.A.N. 5577, 5603. This step provided reassurance that protection of distinctive trade dress was not eliminated by *Sears* and *Compco,* by codifying the common law protection against confusion and deception. *See Sears,* 376 U.S. at 232, 84 S.Ct. at 789, 11 L.Ed.2d at 667, 140 USPQ at 528 (states may protect "distinctive dress in packaging"). However, it would exceed the congressional purpose to interpret the 1988 amendment to § 43(a) as creating a new form of industrial design protection. *See Lee v. Dayton–Hudson,* 838 F.2d at 1188 n. 3, 5 USPQ2d at 1627 n. 3 (referring to the absence of a federal industrial design law). Under § 43(a) the

statutory requirement of likelihood of confusion must be met, in order to prohibit copying of the design of a product.

**B**

Although the protection of trade identification is a goal of the Lanham Act, § 43(a) seeks an appropriate balance among the divergent policies of protecting and encouraging creators and enabling fair competition by copiers, with the purpose of protecting consumers from confusion or palming off, while enhancing the consumer benefits of competition. In *Two Pesos*, by concurring opinion Justice Stevens explained that:

"[U]nder the Lanham Act [§ 43(a)], the ultimate test is whether the public is likely to be deceived or confused by the similarity of the marks.... Whether we call the violation infringement, unfair competition or false designation of origin, the test is identical—is there a 'likelihood of confusion?'" *New West Corp. v. NYM Co. of California, Inc.*, 595 F.2d 1194, 1201 (CA 9 1979).

—— U.S. at ——, 112 S.Ct. at 2763, 120 L.Ed.2d at 630–31, 23 USPQ2d at 1084 (alterations in original). Thus the right to slavishly copy a product design that is not the subject of patent, copyright, or trademark, is accompanied by the obligation to avoid confusion, mistake, or deception.

■■■ The burden of avoiding confusion, and the burden of proving that confusion has been avoided, are on the copier, for the Second Circuit has held that intentional copying of trade dress creates a presumption of confusing similarity:

In assessing the likelihood of confusion to the public, an important factor is whether or not the second comer created the similar trade dress intentionally. If there was intentional copying the second comer will be presumed to have intended to create a confusing similarity of appearance and will be presumed to have succeeded.

*Perfect Fit Industries, Inc. v. Acme Quilting Co.*, 618 F.2d 950, 954, 205 USPQ 297, 301 (2d Cir.1980) and cases cited. These presumptions arise from the duty of the second comer "to so name and dress his product as to avoid all likelihood of consumers confusing it with the product of the first comer." *Harold F. Ritchie, Inc. v. Chesebrough–Pond's, Inc.*, 281 F.2d 755, 758, 126 USPQ 310, 312 (2d Cir.1960). Applying these presumptions, the district court found likelihood of confusion between Appellant's shoes and L.A. Gear's Hot Shots shoes.

These presumptions are not irrebuttable. They place upon the copier the burden of proof and persuasion that consumer confusion has been avoided. The district court's holding that confusion was likely, with respect to Appellants' copies of the Hot Shots design, is reviewed in light of this burden.

Likelihood of confusion has been treated by the Second Circuit as, variously, a question of law based on underlying fact, *Murphy v. Provident Mutual Life Insurance Co.*, 923 F.2d 923, 928 (2d Cir.1990), and a mixed question of law and fact, *see Polaroid Corp. v. Polarad Electronics Corp.*, 287 F.2d 492, 495, 128 USPQ 411, 413 (2d Cir.), *cert. denied*, 368 U.S. 820, 82 S.Ct. 36, 7 L.Ed.2d 25 (1961) (stating factors to be considered).

The district court held that the presence of Appellants' trademarks on the accused shoes did not dispel the likelihood of confusion, since the trademarks were similarly located on all the shoes and had the same two-tone colors. The district court observed that Appellants' and L.A. Gear's shoes were generally sold in different stores, and reasoned that confusion based on overall appearance was more likely because consumers would not be able to make a side-by-side comparison. The court found intent on the part of Appellants to benefit from the advertising efforts of L.A. Gear, and referred to a survey in which some respondents thought there was a relationship between the sources of the shoes. The court found that purchasers of women's and girls' athletic shoes were unsophisticated and would not commit a large amount of time to their purchase. The court observed the price differential between Appellants' and L.A. Gear's shoes, but did not consider this factor to be of balancing weight.

Appellants argue that the clear, prominent, and permanent labelling of their shoes with their own established trademarks is such a strong and effective factor in avoiding likelihood of confusion that it rebuts any presumption based on actual copying. The entire product image must be considered, and all relevant factors must be weighed, in deciding whether Appellants' labelling, by use of their own trademarks and by their placement on the shoes, served to dispel confusion.

A copier must not only attempt to avoid likelihood of confusion; it must succeed in doing so. Thus when there is a source-indicating label, the label must be effective to make consumer confusion unlikely, in light of all the circumstances. L.A. Gear directs our attention to cases in which the source-indicating designation was found insufficient to avoid consumer confusion. In *LeSportsac v. K Mart* the plaintiff's and defendant's bags were "strikingly similar" in overall design and appearance, and it was held that relatively inconspicuous labelling, substituting the words "di paris sac" for "LeSportsac" in similar style and placement, did not avoid likelihood of confusion. 754 F.2d at 79, 225 USPQ at 659–60.

In *Lois Sportswear, U.S.A., Inc. v. Levi Strauss & Co.*, 799 F.2d 867, 230 USPQ 831 (2d Cir.1986), the defendant had placed, on the back pocket of denim jeans, a stitching pattern that was substantially similar to the Levi Strauss stitching pattern, which was the subject of a registered trademark. The defendant argued that likelihood of confusion was avoided because the jeans were clearly labelled as to origin. The court found that most of the labelling was intended to be discarded after purchase, that the Levi stitching pattern had acquired strong secondary meaning over a hundred years of use, and that labelling at the point of purchase was insufficient to prevent likelihood of confusion after the labels were removed.

Appellants argue that their facts are strongly different from those of *LeSportsac* and *Lois Sportswear*, wherein the trademarks themselves were confusingly similar, as well as the design of the goods to which they were applied. They cite *Bose Corp. v. Linear Design Labs, Inc.*, 467 F.2d 304, 309, 175 USPQ 385, 389 (2d Cir. 1972), wherein the court found that "[t]he presence of [defendant's] name on the product goes far to eliminate confusion of origin", and *Norwich Pharmacal Co. v. Sterling Drug, Inc.*, 271 F.2d 569, 571, 123 USPQ 372, 375 (2d Cir.1959), *cert. denied*, 362 U.S. 919, 80 S.Ct. 671, 4 L.Ed.2d 739 (1960), where the court held confusion unlikely since the names on the bottles were easily distinguished although the appearance of the products was otherwise similar. In *Stormy Clime*, 809 F.2d at 977, 1 USPQ2d at 2031, the defendant's labelling of its raincoats at the inside of the neck, described as a customary location where consumers would expect to find it, was mentioned as one of the factors that differentiated the products.

The court in *Bose* remarked that "the mere act of copying would not amount to unfair competition". *Bose*, 467 F.2d at 310, 175 USPQ at 390. In *Bristol–Myers Squibb*, 973 F.2d at 1046, 25 USPQ2d at 1170, the court held that despite the similarity of package colors, size, and lettering, confusion was unlikely due to the prominent placement of the famous trademarks on the respective packages. However, the court cautioned that:

> In other cases the trade name [sic: trademark] may be a less dominant feature of the entire trade dress and thus have less force in countering other similarities between two trade dresses. Also, the junior user's trade name may less strongly identify a particular source than the "Tylenol" name at issue here.

*Id.* at 1047, 25 USPQ2d at 1171. L.A. Gear argues that *Bristol–Myers Squibb* is limited to product packaging and the particular fact of the well-known trademarks there involved. However, the holding in *Bristol–Myers Squibb* is in accord with other Second Circuit rulings directed to the dress of the product itself.

Appellants state, without apparent dispute, that the trademarks BALLOONS, AEROBIX, and MacGREGOR are well

known in the discount shoe milieu, and are recognized by consumers. Melville states that before applying these marks to its copies of L.A. Gear's Hot Shots shoes, it had sold over nine million pairs of shoes with the AEROBIX trademark, over eleven million pairs of shoes with the MacGREGOR trademark, and about forty million pairs of shoes with the BALLOONS trademark.

Appellants stress the prominent position of these trademarks on the shoes, permanently placed and easily read. Appellants refer to *Reebok International Ltd. v. Alon*, 5 USPQ2d 1830, 1831 (C.D.Cal.1987), wherein the court found consumer confusion unlikely "given the overall differences in appearance and the highly visible individual names of each of the brands of shoes". See, also, *Payless Shoesource Inc. v. Reebok International Ltd.*, 804 F.Supp. 206, 25 U.S.P.Q.2d 1130 (D.C.Kan.1992), wherein the court found the similarity of appearance of the two shoe designs was lessened by the fact that each shoe bore a different brand name.

We also deem it relevant that these shoes move in different retail channels. Although the district court found that this fact favored consumer confusion because it prevented side by side comparison, the Second Circuit has held that sales in different kinds of stores is a factor weighing against a likelihood of confusion. *See Vitarroz Corp. v. Borden, Inc.*, 644 F.2d 960, 967, 209 USPQ 969, 975 (2d Cir.1981) (fact that plaintiff's product was sold primarily in specialty stores that did not carry any of defendant's products gave "some weight" to holding of no likelihood of confusion). Similarly, the significant price differences can not be ignored. *See McGregor–Doniger v. Drizzle*, 599 F.2d at 1134–35, 202 USPQ at 90 (differences in price aided in making confusion unlikely between the original and the copy); *Speedry Products, Inc. v. Dri Mark Products, Inc.*, 271 F.2d 646, 651, 123 USPQ 368, 372 (2d Cir.1959) (wide price differential was deemed a significant factor against likelihood of confu-

sion). Purchasers in discount stores are sufficiently sophisticated, we believe, to know whether they are buying the cheaper copies or the expensive originals. The marks BALLOONS, MacGREGOR, and AEROBIX are plainly legible, as is the similarly positioned trademark L.A. GEAR; unlike the situation in *LeSportsac*, where "di paris sac" as displayed was not readily distinguishable from "LeSportsac". Because the labelling is permanent, the likelihood of post-sale consumer confusion is avoided, unlike the situation in *Lois Sportswear*.

■ We conclude that the conspicuous and permanent placement of the trademarks of L.A. Gear as well as the copyist, and the sophistication of purchasers of fashion athletic shoes, clearly outweigh the similarities in the shoe design, insofar as consumer confusion as to source is avoided. We think the district court was mistaken in viewing these consumers as unsophisticated and casual in these purchases. We agree with Appellants that purchasers of fashion athletic shoes are likely to be well aware of the sources of such shoes, when such sources are conspicuously marked on the shoes by both copier and originator.

Considering all the factors, we conclude that the district court clearly erred in holding that purchasers of these BALLOONS or MacGREGOR or AEROBIX athletic shoes would be likely to be confused or deceived or mistakenly think that they were buying the L.A. GEAR athletic shoes, despite the substantial similarity of overall design. The district court's holding of unfair competition under § 43(a) of the Lanham Act is reversed as to these six models of shoes bearing the trademarks BALLOONS, AEROBIX, and MacGREGOR.[6]

### III

### NEW YORK LAW OF UNFAIR COMPETITION

The district court found that Appellants had violated the New York law of unfair

---

**6.** Since our determination is premised in part on the fact that BALLOONS, MacGREGOR, and AEROBIX are established trademarks, this rul-

ing does not apply to shoe models carrying other marks.

competition. The parties agree that the only difference between this New York law and § 43(a) of the Lanham Act is that proof of secondary meaning is not required under New York law. That difference is now mooted because, as we have affirmed, secondary meaning was established. Thus our ruling with respect to § 43(a) also applies to the New York state action for unfair competition.

### Costs

No costs.

AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.

MAYER, Circuit Judge, concurring in-part and dissenting in-part.

I would affirm the district court's judgment that Thom McAn Shoe Company, Melville Corporation and Pagoda Trading Company, Inc. are liable for unfair competition based on trade dress infringement under section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a) (1988), and the New York state law of unfair competition. I agree with this court that secondary meaning of L.A. Gear's trade dress has been established, but I see no error in the district court's conclusion that there is a likelihood of confusion.

The trial court properly applied the factors set out in *Polaroid Corp. v. Polarad Electronics Corp.*, 287 F.2d 492, 495, 128 USPQ 411, 413 (2nd Cir.1961), to determine whether a likelihood of consumer confusion exists. Its findings of fact en route to its conclusion are entitled to "considerable deference." *Lois Sportswear, U.S.A., Inc. v. Levi Strauss & Co.*, 799 F.2d 867, 873, 230 USPQ 831, 835 (2nd Cir.1986). The district court's findings on the *Polaroid* factors are amply supported by the evidence in the record, are not clearly erroneous, and all weigh in favor of its determination that a likelihood of confusion exists. It is apparent that the only way to come to any other conclusion is for this court to reweigh the evidence that was before the trial court, and to substitute its "hunch" for the district court's judgment. This is an impermissible intrusion on the fact finding role of the district court, and a violation of the proper role of an appellate court.

Of course, the decision on this issue is founded on the law of the second circuit, and the views of this court on second circuit law are not binding on anyone beyond the immediate litigants. So I view it as counterproductive for this court to issue a lengthy published "precedential" opinion purporting to set out the state of the law of that circuit. The practice of expounding on the law of other circuits only obfuscates the doctrine it ostensibly attempts to clarify, and should be avoided in light of the curious rule that we are bound by that law. "I can hardly see the use of writing judicial opinions unless they are to embody methods of analysis and of exposition which will serve the profession as a guide to the decision of future cases. If they are not better than an excursion ticket, good for this day and trip only, they do not serve even as protective coloration for the writer of the opinion and would much better be left unsaid." Justice Stone to Professor Frankfurter *quoted in* C. Miller, The Supreme Court and the Uses of History 13 (1969).

I have no quarrel with the disposition of the design patent infringement issue, although I see nothing "adding significantly to the body of law," Fed.Cir.R. 47.8(b), to warrant publication.