### ODDZON PRODUCTS, INC.,
#### Plaintiff–Appellant,

v.

### JUST TOYS, INC., Lisco, Inc. and Spalding & Evenflo Companies, Inc., Defendants/Cross–Appellants.

#### Nos. 96–1550, 96–1551.

United States Court of Appeals, Federal Circuit.

Aug. 8, 1997.

David A. Fanning, Kolisch, Hartwell, Dickinson, McCormack & Heuser, Portland, OR, argued for plaintiff-appellant. With him on the brief was Pierre C. Van Rysselberghe.

Peter P. Chen, Wilson, Sonsini, Goodrich & Rosati, P.C., Palo Alto, CA, argued for defendants/cross-appellants. With him on the brief were James C. Otteson and Colleen Bal.

Before MICHEL, LOURIE, and RADER, Circuit Judges.

LOURIE, Circuit Judge.

OddzOn Products, Inc. appeals from the decision of the United States District Court for the Northern District of California granting summary judgment in favor of defendants Just Toys, Inc., Lisco, Inc., and Spalding & Evenflo Companies, Inc. (collectively "Just Toys") on OddzOn's claims of design patent infringement, trade dress infringement, and state-law unfair competition. Just Toys cross-appeals from the decision granting summary judgment in favor of the patentee OddzOn on Just Toys' claim of patent invalidity. *OddzOn Prods., Inc. v. Just Toys, Inc.*, No. 95–CV–1077 (N.D.Cal. July 29, 1996). Because OddzOn has failed to demonstrate that a reasonable jury could find that Just Toys' tossing balls infringe OddzOn's design patent or protectable trade dress, and, derivatively, that there was unfair competition, we affirm the district court's judgment in favor of the defendant Just Toys. Because no reasonable jury could conclude other than that the patented design is ornamental, novel, and nonobvious, we affirm the district court's judgment that the patent was not proved invalid.

## BACKGROUND

OddzOn is a toy and sporting goods company that sells the popular "Vortex" tossing ball, a foam football-shaped ball with a tail and fin structure. The Vortex ball is OddzOn's commercial embodiment of its design patent, U.S. Patent D 346,001, which issued on April 12, 1994. Figure 1 of the patent is shown below:

Fig.1

Just Toys, Inc., another toy and sporting goods company, sells a competing line of "Ultra Pass" balls. Two versions of the allegedly infringing Ultra Pass balls are shown below:

OddzOn sued Just Toys for design patent infringement, trade dress infringement, and state-law unfair competition, asserting that the Ultra Pass line of tossing balls was likely to be confused with OddzOn's Vortex ball, and that the Ultra Pass packaging was likely to be confused with the Vortex packaging. Just Toys denied infringement and asserted that the patent was invalid. On cross-motions for summary judgment, the district court held that the patent was not shown to be invalid and was not infringed. The court also held that Just Toys did not infringe OddzOn's trade dress.

The district court determined that two confidential designs* that had been disclosed to the inventor qualified as subject matter encompassed within the meaning of 35 U.S.C. § 102(f) (1994) and concluded that these designs could be combined with other prior art designs for purposes of a challenge to the validity of the patent under 35 U.S.C. § 103 (1994). Nonetheless, the district court held that the patented design would not have been obvious in light of the prior art, including the two confidential designs. The court construed the single claim of the patent as being directed to the design for:

> a ball shaped like a football, with a slender, straight tailshaft projecting from the rear of the football. In addition, the '001 Patent design has three fins symmetrically arranged around the tailshaft, each of which has a gentle curve up and outward which creates a fin with a larger surface area at the end furthest from the ball.

The fins flare outwardly along the entire length of the tailshaft, with the front end of the fin extending slightly up along the side of the football so that the fins seemingly protrude from the inside of the football.

After construing the claim, the court held that the patented design was not dictated solely by function and thus that it was not invalid on that ground. It also held that OddzOn failed to present sufficient evidence to allow a reasonable jury to find infringement. The district court considered OddzOn's proffered consumer survey evidence of similarity, but held that it was not probative on the question whether the accused balls were substantially similar to the patented design in terms of its protectable features, *i.e.*, its ornamental features. The district court concluded that the survey evidence demonstrated nothing more than that any ball with a tail and fins, regardless of its ornamental features, would appear to be similar to the patented design.

The court found that OddzOn's proffered testimony from an expert was also not probative of any similarity between the ornamental features of the accused balls and the patented design. It noted that the bases for the expert's conclusion of similarity were unclear and that the legal standards applied to reach that conclusion were not apparent. The court excluded evidence of "actual confusion," stating that there was no basis to determine that the mistaken return of twenty-one of the

---

* Because these designs are confidential, they will not be described herein.

accused balls to OddzOn would not have been typical in the industry absent "confusion." Furthermore, it stated that there was no way of determining whether the ornamental features caused the "confusion."

The district court also held that the accused balls and their packaging did not violate OddzOn's protectable trade dress rights. Holding that OddzOn's evidence was not probative of consumer confusion regarding the source of the accused balls, the court granted Just Toys' motion for summary judgment. Because the court found no likelihood of confusion, it did not reach the issues of inherent distinctiveness or secondary meaning. Finally, determining that California's unfair competition law is "substantially congruent" to trademark infringement law, the question being whether there is a likelihood of confusion with regard to source, the court ruled that OddzOn's state-law claim must fall with its federal trade dress claims. OddzOn appeals and Just Toys cross-appeals the grant of the respective summary judgment motions.

## DISCUSSION

■ We review a district court's grant of summary judgment *de novo*. *Conroy v. Reebok Int'l, Ltd.*, 14 F.3d 1570, 1575, 29 USPQ2d 1373, 1377 (Fed.Cir.1994). Summary judgment is appropriate when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). Thus, summary judgment may be granted when no "reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). In determining whether there is a genuine issue of material fact, the evidence must be viewed in a light most favorable to the party opposing the motion, with doubts resolved in favor of the opponent. *Transmatic, Inc. v. Gulton Indus., Inc.*, 53 F.3d 1270, 1274, 35 USPQ2d 1035, 1038 (Fed.Cir.1995).

### A. *The Prior Art Status of § 102(f) Subject Matter*

■ The district court ruled that two confidential ball designs (the "disclosures") which "inspired" the inventor of the OddzOn design were prior art for purposes of determining obviousness under § 103. The district court noted that this court had recently declined to rule definitively on the relationship between § 102(f) and § 103, *see Lamb–Weston, Inc. v. McCain Foods, Ltd.*, 78 F.3d 540, 544, 37 USPQ2d 1856, 1858–59 (Fed.Cir. 1996), but relied on the fact that the United States Patent and Trademark Office (PTO) interprets prior art under § 103 as including disclosures encompassed within § 102(f). OddzOn challenges the court's determination that subject matter encompassed within § 102(f) is prior art for purposes of an obviousness inquiry under § 103. OddzOn asserts that because these disclosures are not known to the public, they do not possess the usual hallmark of prior art, which is that they provide actual or constructive public knowledge. OddzOn argues that while the two disclosures constitute patent-defeating subject matter under 35 U.S.C. § 102(f), they cannot be combined with "real" prior art to defeat patentability under a combination of § 102(f) and § 103.

The prior art status under § 103 of subject matter derived by an applicant for patent within the meaning of § 102(f) has never expressly been decided by this court. We now take the opportunity to settle the persistent question whether § 102(f) is a prior art provision for purposes of § 103. As will be discussed, although there is a basis to suggest that § 102(f) should not be considered as a prior art provision, we hold that a fair reading of § 103, as amended in 1984, leads to the conclusion that § 102(f) is a prior art provision for purposes of § 103.

Section 102(f) provides that a person shall be entitled to a patent unless "he did not himself invent the subject matter sought to be patented." This is a derivation provision, which provides that one may not obtain a patent on that which is obtained from someone else whose possession of the subject matter is inherently "prior." It does not pertain only to public knowledge, but also applies to private communications between the inventor and another which may never

become public. Subsections (a), (b), (e), and (g), on the other hand, are clearly prior art provisions. They relate to knowledge manifested by acts that are essentially public. Subsections (a) and (b) relate to public knowledge or use, or prior patents and printed publications; subsection (e) relates to prior filed applications for patents of others which have become public by grant; and subsection (g) relates to prior inventions of others that are either public or will likely become public in the sense that they have not been abandoned, suppressed, or concealed. Subsections (c) and (d) are loss-of-right provisions. Section 102(c) precludes the obtaining of a patent by inventors who have abandoned their invention. Section 102(d) causes an inventor to lose the right to a patent by delaying the filing of a patent application too long after having filed a corresponding patent application in a foreign country. Subsections (c) and (d) are therefore not prior art provisions.

In *In re Bass*, 59 C.C.P.A. 1342, 474 F.2d 1276, 1290, 177 USPQ 178, 189 (CCPA 1973), the principal opinion of the Court of Customs and Patent Appeals held that a prior invention of another that was not abandoned, suppressed, or concealed (102(g) prior art) could be combined with other prior art to support rejection of a claim for obviousness under § 103. The principal opinion noted that the provisions of § 102 deal with two types of issues, those of novelty and loss-of-right. It explained: "Three of [the subsections,] (a), (e), and (g), deal with events prior to applicant's *invention* date and the other, (b), with events more than one year prior to the U.S. *application* date. These are the 'prior art' subsections." *Id.* (emphasis in original). The principal opinion added, in dictum (§ 102(f) not being at issue), that "[o]f course, (c), (d), and (f) have no relation to § 103 and no relevancy to what is 'prior art' under § 103." *Id.* There is substantial logic to that conclusion. After all, the other prior art provisions all relate to subject matter that is, or eventually becomes, public. Even the "secret prior art" of § 102(e) is ultimately public in the form of an issued patent before it attains prior art status.

Thus, the patent laws have not generally recognized as prior art that which is not accessible to the public. It has been a basic principle of patent law, subject to minor exceptions, that prior art is:

technology already available to the public. It is available, in legal theory at least, when it is described in the world's accessible literature, including patents, or has been publicly known or in ... public use or on sale "in this country." That is the real meaning of "prior art" in legal theory—it is knowledge that is available, including what would be obvious from it, at a given time, to a person of ordinary skill in the art.

*Kimberly–Clark Corp. v. Johnson & Johnson*, 745 F.2d 1437, 1453, 223 USPQ 603, 614 (Fed.Cir.1984) (citations omitted).

Moreover, as between an earlier inventor who has not given the public the benefit of the invention, *e.g.*, because the invention has been abandoned without public disclosure, suppressed, or concealed, and a subsequent inventor who obtains a patent, the policy of the law is for the subsequent inventor to prevail. *See W.L. Gore & Assocs., Inc. v. Garlock, Inc.*, 721 F.2d 1540, 1550, 220 USPQ 303, 310 (Fed.Cir.1983) ("Early public disclosure is a linchpin of the patent system. As between a prior inventor [who does not disclose] and a later inventor who promptly files a patent application ..., the law favors the latter."). Likewise, when the possessor of secret art (art that has been abandoned, suppressed, or concealed) that predates the critical date is faced with a later-filed patent, the later-filed patent should not be invalidated in the face of this "prior" art, which has not been made available to the public. Thus, prior, but non-public, inventors yield to later inventors who utilize the patent system.

However, a change occurred in the law after *Bass* was decided. At the time *Bass* was decided, § 103 read as follows:

A patent may not be obtained though the invention is not identically disclosed or described as set forth in section 102 of this title, if the differences between the subject

matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains. Patentability shall not be negatived by the manner in which the invention was made.

35 U.S.C. § 103. The prior art being referred to in that provision arguably included only public prior art defined in subsections 102(a), (b), (e), and (g).

In 1984, Congress amended § 103, adding the following paragraph:

Subject matter developed by another person, *which qualifies as prior art only under subsection (f) or (g) of section 102* of this title, shall not preclude patentability under this section where the subject matter and the claimed invention were, at the time the invention was made, owned by the same person or subject to an obligation of assignment to the same person.

35 U.S.C. § 103 (now § 103(c)) (emphasis added). It is historically very clear that this provision was intended to avoid the invalidation of patents under § 103 on the basis of the work of fellow employees engaged in team research. *See Section–by–Section Analysis: Patent Law Amendments Act of 1984,* 130 Cong. Rec. 28069, 28071 (Oct. 1, 1984), *reprinted in* 1984 U.S.C.C.A.N. 5827, 5833 (stating that the amendment, which encourages communication among members of research teams, was a response to *Bass* and *In re Clemens,* 622 F.2d 1029, 206 USPQ 289 (CCPA 1980), in which "an earlier invention which is not public may be treated under Section 102(g), and possibly under 102(f), as prior art"). There was no clearly apparent purpose in Congress's inclusion of § 102(f) in the amendment other than an attempt to ameliorate the problems of patenting the results of team research. However, the language appears in the statute; it was enacted by Congress. We must give effect to it.

The statutory language provides a clear statement that subject matter that qualifies as prior art under subsection (f) or (g) cannot be combined with other prior art to render a claimed invention obvious and hence unpatentable when the relevant prior art is commonly owned with the claimed invention at the time the invention was made. While the statute does not expressly state in so many words that § 102(f) creates a type of prior art for purposes of § 103, nonetheless that conclusion is inescapable; the language that states that § 102(f) subject matter is not prior art under limited circumstances clearly implies that it is prior art otherwise. That is what Congress wrote into law in 1984 and that is the way we must read the statute.

This result is not illogical. It means that an invention, A', that is obvious in view of subject matter A, derived from another, is also unpatentable. The obvious invention, A', may not be unpatentable to the inventor of A, and it may not be unpatentable to a third party who did not receive the disclosure of A, but it is unpatentable to the party who did receive the disclosure.

The PTO's regulations also adopt this interpretation of the statute. 37 C.F.R. § 1.106(d) (1996) ("Subject matter which is developed by another person which qualifies as prior art only under 35 U.S.C. § 102(f) or (g) may be used as prior art under 35 U.S.C. § 103."). Although the PTO's interpretation of this statute is not conclusive, we agree with the district court that it is a reasonable interpretation of the statute.

 It is sometimes more important that a close question be settled one way or another than which way it is settled. We settle the issue here (subject of course to any later intervention by Congress or review by the Supreme Court), and do so in a manner that best comports with the voice of Congress. Thus, while there is a basis for an opposite conclusion, principally based on the fact that § 102(f) does not refer to public activity, as do the other provisions that clearly define prior art, nonetheless we cannot escape the import of the 1984 amendment. We therefore hold that subject matter derived from another not only is itself unpatentable to the party who derived it under § 102(f), but,

when combined with other prior art, may make a resulting obvious invention unpatentable to that party under a combination of §§ 102(f) and 103. Accordingly, the district court did not err by considering the two design disclosures known to the inventor to be prior art under the combination of §§ 102(f) and 103.

■ In addition to arguing that the district court properly considered § 102(f) to be a prior art provision for purposes of § 103, Just Toys argues that the two confidential disclosures known to the inventor, but not disclosed to the PTO, were "material to patentability" and hence should have been disclosed. Just Toys therefore asks this court to remand the case so that the district court can hear its mooted motion for summary judgment on the issue of inequitable conduct. We decline to do so. In light of the ambiguous nature of the statute and the unclear development of the case law regarding the prior art status of § 102(f) subject matter until this point, we hold as a matter of law that OddzOn could not have acted with deceptive intent when it failed to disclose this information to the PTO.

### B. Non–Obviousness Under § 103

■ Just Toys cross-appeals from the district court's conclusion that Just Toys failed to establish obviousness of the design by clear and convincing evidence. Just Toys argues that both of the disclosed § 102(f) designs constitute primary "references" because they "show all of the basic design elements shown in the '001 patent: a football with a tailshaft and fins." This argument is unpersuasive.

Pursuant to 35 U.S.C. § 171 (1994), one may obtain a design patent for "any new, original, and ornamental design for an article of manufacture." The design must also be non-obvious. *Id.* ("The provisions for this title relating to patents for inventions shall apply to patents for designs, except as otherwise provided."); *In re Borden,* 90 F.3d 1570, 1574, 39 USPQ2d 1524, 1526 (Fed.Cir.1996). We agree with the district court that none of the cited designs, including the two confidential disclosures, render the patented design obvious, either individually or in combination. According to familiar law, a design patent only protects the ornamental aspects of the design. Because the presence of a tailshaft and fins has been shown to be necessary to have a ball with similar aerodynamic stability to OddzOn's commercial embodiment, such general features are functional and thus not protectable as such. Invalidating prior art must show or render obvious the *ornamental* features of a patented design. The existence of prior art simply showing a ball with a tailshaft and fins, without more, is not sufficient to render the patented design obvious. Just Toys does not dispute the fact that the fins of the confidential disclosures lack the ornamental features of the patented design. They do not appear to protrude from the ball while gently flaring outwardly. Because none of the prior art cited by Just Toys exhibits ornamental characteristics that are the same as or similar to OddzOn's design, we conclude that the district court did not err in holding that the cited references would not have rendered the patented design obvious.

### C. Design Patent Infringement

■ OddzOn argues that the district court erred in finding a lack of infringement and that it improperly weighed the credibility and probative value of OddzOn's evidence. OddzOn first contends that its evidence established infringement, and that a simple comparison of the accused products with the figures in the design patent is all that is required in an infringement inquiry. In championing the sufficiency of its evidence, OddzOn argues that "the scope of a design patent is effectively determined by deciding infringement, rather than by construing the claim." We do not agree.

■ Whether a design patent is infringed is determined by first construing the claim to the design, when appropriate, and then comparing it to the design of the accused device. *Elmer v. ICC Fabricating,*

*Inc.,* 67 F.3d 1571, 1577, 36 USPQ2d 1417, 1420 (Fed.Cir.1995). A design patent only protects the novel, ornamental features of the patented design. *See KeyStone Retaining Wall Sys., Inc. v. Westrock, Inc.,* 997 F.2d 1444, 1450, 27 USPQ2d 1297, 1302 (Fed. Cir.1993); *Lee v. Dayton–Hudson Corp.,* 838 F.2d 1186, 1188, 5 USPQ2d 1625, 1627 (Fed. Cir.1988) ("[I]t is the non-functional, design aspects that are pertinent to determinations of infringement.") (footnote omitted). Where a design contains both functional and non-functional elements, the scope of the claim must be construed in order to identify the non-functional aspects of the design as shown in the patent. *Lee,* 838 F.2d at 1188, 5 USPQ2d at 1627.

■■■■ The comparison step of the infringement analysis requires the fact-finder to determine whether the patented design as a whole is substantially similar in appearance to the accused design. The patented and accused designs do not have to be identical in order for design patent infringement to be found. *See Braun Inc. v. Dynamics Corp. of Am.,* 975 F.2d 815, 820, 24 USPQ2d 1121, 1125 (Fed.Cir.1992). It is the appearance of a design as a whole which is controlling in determining infringement. There can be no infringement based on the similarity of specific features if the overall appearance of the designs are dissimilar:

> [I]f, in the eye of an ordinary observer, giving such attention as a purchaser usually gives, two designs are substantially the same, if the resemblance is such as to deceive such an observer, inducing him to purchase one supposing it to be the other, the first one patented is infringed by the other.

*Gorham Co. v. White,* 81 U.S. (14 Wall.) 511, 528, 20 L.Ed. 731 (1871).

■■■■ In *Gorham,* the claimed elements were purely ornamental, being limited to the scroll work on the handle portion of flatware. If, on the other hand, a design contains both functional and ornamental features, the patentee must show that the perceived similarity is based on the ornamental features of the

design. The patentee "must establish that an ordinary person would be deceived by reason of the common features in the claimed and accused designs which are ornamental." *Read Corp. v. Portec, Inc.,* 970 F.2d 816, 825, 23 USPQ2d 1426, 1434 (Fed.Cir.1992). Design patent infringement is a question of fact, which a patentee must prove by a preponderance of the evidence. *L.A. Gear, Inc. v. Thom McAn Shoe Co.,* 988 F.2d 1117, 1124, 25 USPQ2d 1913, 1918 (Fed.Cir.1993).

In construing the claim of OddzOn's patent, the district court carefully noted the ornamental features that produced the overall "rocket-like" appearance of the design. We agree with the district court's claim construction, which properly limits the scope of the patent to its overall ornamental visual impression, rather than to the broader general design concept of a rocket-like tossing ball. *See Durling v. Spectrum Furniture Co.,* 101 F.3d 100, 104, 40 USPQ2d 1788, 1791 (Fed.Cir.1996) ("A proper interpretation of [the patentee's] claimed design focuses on the visual impression it creates."). We therefore reject OddzOn's contention that overall similarity of the "rocket-like" appearance is sufficient to show infringement.

■■■■ OddzOn next argues that the district court erred by evaluating the persuasiveness of its expert's testimony on summary judgment. Contrary to OddzOn's contention, the district court viewed the expert's testimony in the light most favorable to OddzOn. However, the court held that the expert's opinion was wholly conclusory and devoid of any analysis regarding whether the ornamental features created the overall similarity. Thus, the district court held that the expert testimony was insufficient to support a jury verdict in OddzOn's favor. *See Read Corp.,* 970 F.2d at 826, 23 USPQ2d at 1434 (holding that JMOL is appropriate where evidence does not establish that similarity was due to ornamental features).

OddzOn argues that the expert testimony was submitted only to show overall similarity, but not the cause of that similarity. However, an expert's corroboration of overall

similarity was unnecessary. In the context of summary judgment, the survey evidence sufficiently establishes that consumers believe that the patented design and the accused balls look similar. The court therefore did not err by affording little probative weight to the expert's testimony.

OddzOn next argues that the survey establishes not only overall similarity, but that the similarity is due to common ornamental features. Specifically, OddzOn argues that the various features identified by survey respondents, including the ends of the fins, the football shape, the rocket-like tail, and a ball in front with triangular fins in back, are ornamental "because they are not required for a tossing ball." Thus, OddzOn argues, the survey is sufficient to show infringement because it establishes that the common features are ornamental. We disagree. The survey fails to establish a link between the similarity reported by respondents and the patented ornamental aspects of the design. Many of the respondents indicated that the balls were similar. When asked why, they responded by pointing to specific features, some general, some more specific, some functional, some not. However, the survey did not ask the respondents whether they believed that there was overall similarity apart from the fact that both the design and the accused products were essentially footballs with tails and fins.

OddzOn argues that the shape of a football with an arrow-like tail is an ornamental feature because "it is not required for a tossing ball." While OddzOn correctly states that there are many ways of designing "tossing balls," it is undisputed that the ball in question is specifically designed to be thrown like a football, yet travel farther than a traditional foam football. It is the football shape combined with fins on a tail that give the design these functional qualities. The tail and fins on OddzOn's design add stability in the same manner as do the tail and fins found on darts or rockets. They are no less functional simply because "tossing balls" can be designed without them. On the other hand, contrary to Just Toys' arguments in its

cross-appeal, these functional characteristics do not invalidate the design patent, but merely limit the scope of the protected subject matter. The district court's claim construction, which we have approved, captures the overall ornamental quality of the design.

Because the accused products are clearly similar to OddzOn's design in terms of their football shape and their tail and fins, it was incumbent on OddzOn to submit evidence establishing that the ornamental aspects of their football-with-tail-and-fin combination accounted for the similarity perceived by the survey participants. None of the evidence, when viewed in the light most favorable to OddzOn, would support a jury verdict that the accused devices are similar to the patented design with its football-shaped ball, slender tailshaft, and three fins which seemingly protrude out of the football and gently flare outwardly.

▪ OddzOn also submitted evidence establishing that Just Toys' balls were returned to OddzOn by retailers on nineteen different occasions. The district court excluded this evidence of alleged "actual confusion" on the ground of lack of relevance, stating that there was no way to determine whether the mistaken return of the balls was due to "confusion" or was typical of the industry generally. The district court also questioned the probative nature of the evidence stating that there was no way to determine if any "confusion" was caused by ornamental or non-ornamental features.

OddzOn argues that the exclusion was improper because Just Toys never questioned whether the number of returns was "normal" or out of the ordinary. Had Just Toys raised the issue, OddzOn contends that it would have responded and demonstrated its relevance. OddzOn now responds that the "actual confusion" evidence, like the expert's evidence, was *not* submitted to show that the confusion was caused by ornamental features, but rather to show that the overall designs are similar.

We agree with OddzOn that the exclusion of the "actual confusion" evidence on rele-

vance grounds was an abuse of discretion. Given the low threshold for relevancy, it is clear that the evidence was relevant. It has a "tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Fed. R.Evid. 401. We find this error harmless, however, because it does not change the result of OddzOn's appeal. *See* Fed.R.Civ.P. 61. Sufficient evidence of record establishes that the accused balls and OddzOn's patented design are similar. A simple inspection confirms this fact. But, as the district court held, the "actual confusion" evidence is of little probative value because it does not establish whether the balls were returned to OddzOn simply because they had a tail and fins or because they have an ornamental design similar to that of the patented design.

OddzOn further argues that the district court erroneously confused the trade dress survey with the design patent survey. Although this appears to have been true, this error is also harmless. Both surveys suffer from the same infirmity. They fail to distinguish between the ornamental features of the balls and their functional aspects such that a reasonable jury could determine that the perceived similarity was due to the protected ornamental features. Accordingly, we conclude that the district court did not err in holding that Just Toys was entitled as a matter of law to a judgment of non-infringement of OddzOn's design patent.

## D. *Trade Dress*

OddzOn argues that the district court erred in its summary judgment that Just Toys did not unlawfully copy its trade dress. Just Toys had moved for summary judgment on the trade dress claim, asserting that OddzOn's ball design was functional and therefore unprotected. The district court granted Just Toys' motion, but on the ground that OddzOn failed to establish a likelihood of confusion. OddzOn contends that the grant of summary judgment is in error because OddzOn was not granted an opportunity to address the dispositive issue, likelihood of confusion. Citing *Celotex Corp. v. Catrett,* 477 U.S. 317, 326, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986), OddzOn argues that the district court erred by granting the motion for summary judgment on a ground other than that raised by the movant, effectively entering summary judgment *sua sponte* without giving OddzOn an opportunity to respond.

We disagree. The district court did not enter summary judgment *sua sponte.* In its summary judgment motion, Just Toys asserted that its products did not infringe OddzOn's design patent or any protectable trade dress, and specifically asserted that any similarities that the Vortex ball shares with the Ultra Pass ball are functional. OddzOn responded to Just Toys' motion by submitting its design patent survey, samples of alternate ball designs, and its trade dress likelihood of confusion survey. OddzOn has not suggested that it possessed other trade dress surveys regarding likelihood of confusion that it failed to submit to the court. We therefore find OddzOn's argument that it lacked an opportunity to respond with sufficient evidence to raise a genuine issue regarding likelihood of confusion to be without merit. *See Celotex,* 477 U.S. at 322, 106 S.Ct. at 2552 (stating that summary judgment is appropriate "after adequate time for discovery and upon motion, against the party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial").

OddzOn also argues that the district court improperly discounted the evidence of record, including its trade dress consumer survey. OddzOn asserted a claim of trade dress infringement under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a) (1994). Because trade dress issues are not unique to the exclusive jurisdiction of this court, we defer to the law of the regional circuit in which a district court sits. *See KeyStone Retaining Wall Sys., Inc.,* 997 F.2d at 1447–48, 27 USPQ2d at 1300. In the

Ninth Circuit, for a plaintiff to prevail in an action for trade dress infringement under the Lanham Act, the plaintiff must show that the asserted trade dress (1) is not functional, (2) is inherently distinctive or has acquired distinctiveness through a secondary meaning, and (3) is likely to cause confusion with the defendant's products. *See Fuddruckers, Inc. v. Doc's B.R. Others, Inc.,* 826 F.2d 837, 841–42, 4 USPQ2d 1026, 1029–30 (9th Cir.1987) (requiring a showing of secondary meaning); *Two Pesos, Inc. v. Taco Cabana, Inc.,* 505 U.S. 763, 776, 112 S.Ct. 2753, 2761, 120 L.Ed.2d 615, 23 USPQ2d 1081, 1086 (1992) (holding that secondary meaning is not required where inherent distinctiveness is shown).

Following the Ninth Circuit's eight factor test for likelihood of confusion articulated in *AMF, Inc. v. Sleekcraft Boats,* 599 F.2d 341, 348–49, 204 USPQ 808, 814 (9th Cir.1979), the district court thoroughly examined the evidence presented and concluded that OddzOn had failed to meet its burden of establishing a likelihood of confusion. The court based its decision on the fact that the defendant's balls are clearly and prominently labeled, the crowded toy market leads to a conclusion that consumers have experience selecting between two marks with care, and the time consumers will spend comparing the balls makes it unlikely that consumers would not be able to discriminate between the two.

In addition, the district court properly discounted the trade dress survey evidence to the extent that consumers believed the accused balls and OddzOn's balls could be associated with each other simply because they both had tails and fins. The mistaken association of two footballs with tails and fins in a line-up composed of three additional balls that lacked these essential features is not probative of trade dress infringement. We are unpersuaded by OddzOn's remaining critique of the district court's analysis. Viewing the evidence in a light most favorable to OddzOn, we hold that the district court did not err in concluding that OddzOn has failed to establish that a likelihood of

confusion exists between Just Toys' balls and OddzOn's balls. We have also considered OddzOn's arguments regarding infringement of its right to protect the trade dress of its packaging and find them equally unpersuasive. As the district court noted, although there are some similarities between the packaging, *e.g.,* they are both rectangular in shape and have the balls mounted on an upward sloping surface, there are also many differences. OddzOn's packaging carries a prominent sports star's picture and endorsement, while Just Toys' packaging does not. Furthermore, different color schemes are used. Most significantly, OddzOn relies on its trade dress survey as establishing a likelihood of confusion regarding the packaging. As previously stated, this survey is insufficient to demonstrate that consumer confusion was related to any protectable aspect of OddzOn's trade dress. We therefore hold that the district court did not err in concluding that OddzOn has failed to establish. that a likelihood of confusion exists between Just Toys' packaging and OddzOn's packaging.

## E. *The Remaining Claims*

OddzOn argues that the district court's summary judgment that there was no unfair competition under state law must be reversed because it failed to address OddzOn's evidence of design patent infringement and trade dress infringement. This argument is without merit. This claim is premised on the same facts and arguments as those proffered to support OddzOn's federal claims. Having decided that Just Toys' design was sufficiently dissimilar to OddzOn's design to avoid both design patent and trade dress infringement, the district court did not err by summarily granting Just Toys' motion on this claim. Because we affirm the district court's rulings on the federal law claims, we likewise affirm its ruling that the evidence equally fails to support the unfair competition claim. We have considered OddzOn's remaining arguments and find them to be without merit.

Finally, in its cross-appeal, Just Toys argues that the district court erroneously affirmed the magistrate judge's order com-

pelling production of privileged documents related to Just Toys' defense to the charge of willful infringement. Because we affirm the district court's holding of non-infringement, this issue is moot, and accordingly the magistrate judge's June 6, 1996 order granting plaintiff's expedited motion to compel is vacated.

## CONCLUSION

The district court did not err in granting Just Toys' motion for summary judgment on OddzOn's design patent claim and on its trade dress and state-law unfair competition claims. Furthermore, the district court did not err in granting OddzOn's motion for summary judgment that Just Toys failed to establish invalidity of the '001 patent. In addition, the district court's order compelling production of privileged documents is vacated as moot. Accordingly, the district court's judgment is affirmed.

*AFFIRMED.*