**CHILD CRAFT INDUSTRIES, INC., Plaintiff,**

v.

**SIMMONS JUVENILE PRODUCTS COMPANY, INC., Defendant.**

**No. IP 97–923–C B/S.**

United States District Court, S.D. Indiana, Indianapolis Division.

Jan. 8, 1998.

---

Donald E. Knebel, Dwight D. Lueck, Barnes & Thornburg, Indianapolis, IN, for Plaintiff.

Ronald J. Baron, Hoffman & Baron, Jericho, NY, John Joseph Tanner, Baker & Daniels, Indianapolis, IN, for Defendant.

### ENTRY AFTER BENCH TRIAL

BARKER, Chief Judge.

This matter comes before the Court following a bench trial on October 22–23, 1997, in which Plaintiff seeks a declaratory judgment of noninfringement of Defendant's U.S.Patent No. Des. 369,490 (the "'490 patent"), which covers an ornamental design of a crib endboard. Alternatively, Plaintiff seeks a finding that the '490 patent is invalid and unenforceable. Defendant counterclaims asserting infringement of the '490 patent and seeking injunctive relief. For the reasons set forth below, the Court *grants* Plaintiff's request for declaratory judgment of noninfringement, *denies* as moot Plaintiff's claim of invalidity of the patent and *denies* Defendant's counterclaim.[1]

---

1. We note that the parties agreed to consolidate a bench trial on the merits of the case with a hearing on Defendant's motion for a preliminary injunction. Because we find that Plaintiff's product does not infringe Defendant's design patent, Defendant's preliminary injunction motion is *denied*.

## I. FACTS

Plaintiff, Child Craft Industries, Inc. (Child Craft), and Defendant, Simmons Juvenile Products Company, Inc. (Simmons), are competitors in the manufacture and sale of baby cribs and other juvenile furniture. Simmons has adopted an aggressive design protection policy and, as a result, owns more than 100 U.S. design patents. On May 7, 1996, the patent at issue in this litigation, the '490 patent, was issued and assigned to Simmons. The '490 patent claims an ornamental design of a "Shaker-style" crib endboard. Simmons has manufactured and sold cribs featuring an embodiment of the patented endboard design since October 1994, in particular, the Prentiss crib.

In June or July 1996, Child Craft's Vice-President of Sales/Marketing, Michael Shaffer, requested that engineering designer, Glen Batt, modify the design of some existing Shaker-style furniture manufactured by a Canadian company and design a crib to complement that furniture. In July 1996, the design of the crib was completed, inspired by the design of the mirror of the Shaker-style furniture suite. Child Craft maintains that, prior to designing the Child Craft crib, neither Mr. Shaffer nor Mr. Batt had ever seen the Simmons' crib models with the embodiment of the patented endboard. In the fall of 1996, Child Craft began manufacturing and selling a Shaker-style crib incorporating Mr. Batt's design, Child Craft Model No. 16961.

Simmons asserts that it became aware of Child Craft's new Shaker-style crib in March 1997. In a letter dated April 25, 1997, Simmons accused Child Craft of infringing the '490 patent and threatened legal action if Child Craft did not immediately cease and desist further infringing activity. In response to Simmons' accusations, Child Craft filed this declaratory judgment action, requesting a finding that Child Craft has not infringed the '490 patent, or, alternatively, that the '490 patent is invalid. Simmons counterclaims, requesting that the Court find that its '490 patent is valid and infringed by Child Craft and seeking to enjoin Child Craft from manufacturing, distributing and selling its infringing cribs and for damages and at-torneys' fees for willful infringement by Child Craft.

## II. INFRINGEMENT

The issue of design patent infringement is one of fact, to be proven by a preponderance of the evidence. *See Oddzon Products, Inc. v. Just Toys, Inc.,* 122 F.3d 1396, 1405 (Fed.Cir.1997); *Braun Inc. v. Dynamics Corp. of America,* 975 F.2d 815, 819 (Fed. Cir.1992). The first step in the analysis of design patent infringement is construing the claim of the patent. *See Oddzon,* 122 F.3d at 1404; *Elmer v. ICC Fabricating, Inc.,* 67 F.3d 1571, 1577 (Fed.Cir.1995). In construing the claim of a patent, the Court may consider only the ornamental, novel and non-functional features of the design. *See Oddzon,* 122 F.3d at 1405; *KeyStone Retaining Wall Sys., Inc. v. Westrock, Inc.,* 997 F.2d 1444, 1450 (Fed.Cir.1993); *Lee v. Dayton–Hudson Corp.,* 838 F.2d 1186, 1188 (Fed.Cir. 1988). "The scope of a patent [is limited] to its overall ornamental visual impression." *Oddzon,* 122 F.3d at 1405; *see also Durling v. Spectrum Furniture Co.,* 101 F.3d 100, 104 (Fed.Cir.1996). The claim of a design patent must focus on the visual impression it creates because, "unlike an invention in a utility patent, a patented ornamental design has no use other than its visual appearance." *In re Harvey,* 12 F.3d 1061, 1064 (Fed.Cir.1993). In short, "design patents have almost no scope. The claim at bar, as in all design cases, is limited to what is shown in the application drawings." *In re Mann,* 861 F.2d 1581, 1582 (Fed.Cir.1988).

The '490 patent claims "the ornamental design of a crib endboard, as shown and described." Plaint.Exh. 1. The patent incorporates Shaker design in its overall simplicity, the use of straight endposts and slats, and a domed cap rail. However, the patent cannot be construed broadly to protect all Shaker-style crib endboards. The particular ornamental features of the design must be taken into account, for these features are part of the application drawings and limit the scope of the patent accordingly. The prior art is also relevant to construing the claim of the design patent, for a design patent covers only those design elements that are novel.

*See Oddzon,* 122 F.3d at 1405; *KeyStone,* 997 F.2d at 1450; *Lee v. Dayton–Hudson Corp.,* 838 F.2d at 1188.

The patent office cited three prior art references in its prosecution of the '490 patent: (1) Brunner Design Patent No. 359,185 issued January 13, 1995 (the " '185 patent") (Plaint.Exh.3), (2) Stuart Design Patent No. 56,900, issued January 4, 1921 (the " '900 patent") (Plaint.Exh.4), and (3) a catalogue page illustrating the Somerville crib sold by Simmons (Plaint.Exh.5). *See* Plaint.Exh. 1. In addition, Child Craft presented several relevant prior art references at trial that were not included in the patent prosecution, including a Child Craft crib sold in the late 1980s (Plaint.Exh.45, Def.Exh.AJ), several cribs sold by Child Craft in 1994 (Plaint. Exhs.39–43) and several cribs sold by Simmons beginning in the early 1990s (Plaint. Exhs.10–13).

The prior art reveals all of the basic elements of the '490 patent, both alone and in combination. Several designs include flat, rectangular endposts (*see* Plaint.Exhs. 12, 13, 39, 40, 41, 43 and 45) and many of those designs show the same endposts coupled with a flat, plain bottom rail (*see* Plaint.Exhs. 12, 13, 43 and 45). Most of the prior art designs contain a domed cap rail (*see* Plaint.Exhs. 3, 5, 10, 11, 12, 13, 39, 40, 41, 42, 43 and 45), two of which combine a connected intermediate rail (*see* Plaint.Exhs. 3 and 5). Many of the designs have flat slats (*see* Plaint.Exhs. 3, 4, 12, 13, 41 and 43), several of which contain an irregular slat configuration such as Simmons uses in the '490 patent (*see* Plaint.Exh. 3 (showing a one-three-one wide slat configuration), Plaint.Exh. 4 (showing a three-five-three narrow slat configuration) and Plaint. Exh. 39 (showing a two-three-two slat configuration)).

While each of the basic elements of the '490 patent appears in the prior art, no single reference contains all of the elements combined in the '490 patent. Therefore, the parties agree that Simmons may patent the particular combination of elements. Accordingly, Simmons attempts to claim the combination of the following design features:

(1) a dome shaped cap rail having flat ledges at the ends which extend over a pair of corner posts; (2) an intermediate rail which fills the underside of the cap rail; (3) flat-surfaced vertical corner posts; (4) flat, vertical slats; and (5) a flat surfaced bottom rail.

Def. Post–Trial Br. at 5. However, this description is far too broad for design protection, especially in light of the wide array of crib endboard designs. Simmons seeks protection for a domed cap rail combined with any type of connected intermediate rail. In addition, Simmons somewhat disingenuously ignores its unusual 3–4–3 slat configuration as an ornamental feature, seeking protection for any type of "flat, vertical slats" used in connection with the other design features.

■ The Court is not persuaded by Simmons' broad description of the claim of the patent to the extent it omits reference to a flat-bottomed intermediate rail and the unique 3–4–3 slat configuration. As the Federal Circuit cautions, "Where, as here, a field is crowded with many references relating to the design of the same type of [device], we must construe the range of equivalents very narrowly." *Litton Sys., Inc. v. Whirlpool Corp.,* 728 F.2d 1423, 1444 (Fed.Cir.1984). Therefore, the Court construes the claim of the '490 patent, in relevant part, to include among its novel ornamental features (1) a domed cap rail connected to a flat-bottomed intermediate rail and (2) an irregular 3–4–3 slat configuration. Figures 1, 3, and 5 of the application drawings clearly display these design features, while Figure 8 details the spacing and shape of a portion of the slats. *See* Plaint.Exh. 1. These features give the basic Shaker design its distinctive and novel ornamental appearance.

■ After construing the claim of the patent, the Court must then compare the claim to the accused design in order to determine whether the design patent has been infringed. *See Elmer v. ICC Fabricating,* 67 F.3d at 1577. This comparison involves applying a two-part test. First, there must be a substantial similarity between the two designs. *See Gorham Co. v. White,* 14 Wall. 511, 81 U.S. 511, 528, 20 L.Ed. 731 (1871); *L.A. Gear, Inc. v. Thom McAn Shoe Co.,* 988 F.2d 1117, 1125 (Fed.Cir.1993). Second, the simi-

larity must be a result of appropriation of the point of novelty of the design patent. *See Oakley Inc. v. Int'l Tropic–Cal, Inc.*, 923 F.2d 167, 169 (Fed.Cir.1991); *Avia Group Int'l, Inc. v. L.A. Gear California, Inc.*, 853 F.2d 1557, 1565 (Fed.Cir.1988).

The Supreme Court in *Gorham* first established the test for substantial similarity patent infringement cases:

> [I]f, in the eye of an ordinary observer, giving such attention as a purchaser usually gives, two designs are substantially the same, if the resemblance is such as to deceive such an observer, inducing him to purchase one supposing it to be the other, the first one patented is infringed by the other.

*Gorham,* 81 U.S. at 528. Substantial similarity does not require a side-by-side dissection of the two designs. *See Ashley v.. Weeks–Numan Co.,* 220 F. 899, 902 (2d Cir.1915). Rather, the design must be considered as a whole, and "the ultimate question requires determining whether the effect of the whole design [is] substantially the same." *L.A. Gear v. Thom McAn Shoe Co.,* 988 F.2d at 1125. In addition, the accused design need not be identical to the patented design to infringe. *See Lee v. Dayton–Hudson Corp.,* 838 F.2d at 1190. "Minor differences between a patented design and an accused article's design cannot, and shall not, prevent a finding of infringement." *Litton,* 728 F.2d at 1444.

Applying the standards set forth above and visually comparing the two designs,[2] the Court concludes that the accused design is not substantially similar to Simmons' patented design. The claimed design is limited to a crib endboard that includes a domed cap rail coupled with a flat-bottomed intermediate rail as well as a unique 3–4–3 slat configuration. The Child Craft model does not incorporate these distinctive ornamental features and, as a result, presents a markedly different overall visual impression. The Child Craft design casts an arcuate, graceful and balanced appearance, in contrast to the more severe, linear look of the Simmons design. The only rounded detail in the Simmons design is the shape of the domed cap rail, echoed in the concave relief line as well as the juncture of the cap rail to the intermediate rail. However, even these arcs are flat and severe, adding to the overall linear impression cast by the patented design.

In comparison, the Child Craft design incorporates many more curved features. The domed cap rail on the accused design has a flatter curve than that of the Simmons design, giving it a softer, more rounded appearance than the patented design. The Child Craft model shows a "curved double roll" in the cap rail relief line, as opposed to the more angular contour line in the Simmons design. The intermediate rail on the Child Craft model is slender with a gently-arched bottom, effectively echoing the curve of the cap rail, in clear contrast to the deep, straight-bottomed intermediate rail used in the Simmons design. The accused design also contains eight long, slender, evenly-spaced, half-rounded slats that meet the intermediate rail in an arched pattern, quite different from the patented design's ten unevenly-spaced slats with irregular widths and no rounding at the edges, meeting the intermediate rail along a straight edge. In sum, the accused design applies a consistent rounding to a simple linear design, casting a relatively graceful overall impression, while the patented design shows a geometric, angular and distinctive design with little softening of its linear aspect.

Child Craft identifies many other design differences between the '490 patent and Child Craft's design, but the distinctions catalogued above most directly affect the overall appearance of each design. While there are

---

**2.** The Court notes the parties have agreed (and the Court also believes) that there is no material difference between the design as shown in the '490 patent and the physical embodiment shown in the Prentiss crib endboard (Plaint. Exh.37). Therefore, for purposes of better comparison, the Court will examine both the patent drawings and the embodiment. *See Braun,* 975 F.2d at 820 n. 8 ("When, as here, 'no significant distinction in design has been shown between the patent drawing and its physical embodiment, it is not error for the court to view them both, and to compare the embodiment of the patented design with the accused device,' " (quoting *Lee v. Dayton–Hudson Corp.,* 838 F.2d at 1189)).

certain basic similarities between the two designs, these similarities owe more to the shared Shaker simplicity of the designs than to any particular ornamentation used in the patented design. The fact that Simmons' design shows a Shaker-style crib endboard does not entitle Simmons to claim protection of all Shaker-style endboard designs. As shown at trial, there are countless Shaker designs used in manufactured furniture, particularly in crib endboards, and design patents do not create such a broad range of protection as to foreclose an entire style of furniture, especially a style as popular as Shaker. Rather, as set forth above, Simmons is limited to claiming the design that appears in the patent drawings, as construed by the Court.

In order to show that an ordinary observer would find the two crib endboards substantially similar, Simmons presented evidence at trial regarding (1) actual consumer confusion in the marketplace, (2) retailer replacement of the Prentiss crib with Child Craft's Model 16961 and (3) lost sales on the Prentiss model linked to replacement with the Child Craft crib. While "design patent infringement does not concern itself with the broad issue of consumer behavior in the marketplace," (*Braun,* 975 F.2d at 819), the Court will consider the most compelling details of this evidence to aid its infringement analysis.

One of Simmons' witnesses, Harvey Draheim, designer of the Prentiss crib and a named inventor on the '490 patent, recounted his own experiences with consumer and retailer confusion regarding the two designs. First, Mr. Draheim testified that he, himself, mistook the accused design for Simmons' Prentiss crib the first time he saw the Child Craft crib. *See* Tr. at 227. Mr. Draheim also recounted his conversation with a retailer in Wisconsin who described the 16961 model as "Child Craft's version" of Simmons' Prentiss crib. *See* Tr. at 228. Steven Conrad, a sales representative for juvenile products (including Simmons products) in Northern California and the Pacific Northwest, testified that he, too, had confused the two designs when first sighting the Child Craft crib. *See* Tr. at 270. Mr. Conrad also testified about his conversation with a Sacramen-

to retailer who called the Child Craft crib a "look-alike" crib to Simmons' Prentiss crib. *See* Tr. at 274. In addition, Mr. Conrad related an occasion when he showed the two crib designs to one couple in July or early August of 1997 in San Jose, California. *See* Tr. at 278. Mr. Conrad observed the couple admiring the Child Craft design and subsequently introduced them to the Prentiss crib. *See* Tr. at 278. Mr. Conrad related that these customers viewed the crib designs as the same and expressed concern only that the Simmons model was priced higher. *See* Tr. at 278.

Simmons also presented evidence regarding retailers replacing in inventory the Prentiss crib with the Child Craft crib, resulting in lost sales for the Prentiss crib. Mr. Conrad testified that, before January 1997, all 25 retail stores he serviced as regional sales representative for Simmons carried the Prentiss crib, but less than a year after the Child Craft crib was introduced, 18 of those 25 retailers no longer sold the Prentiss crib and sold only the Child Craft model. *See* Tr. at 272–273. Mr. Conrad claimed that the loss of floor space resulted in lost sales on the Prentiss crib and attributed the drop in sales to the Child Craft crib, asserting that retailers were directly substituting the Child Craft crib for the Prentiss crib. *See* Tr. at 280. To support Mr. Conrad's account of this regional drop in sales, Mr. Draheim presented the national sales figures of the Prentiss crib since its introduction in 1995. Mr. Draheim asserted that the expected sales for the first half of 1997 were 4500–5000 units, but actual sales reached only about 3000 units (*see* Tr. at 218, 221; Def.Exh. U). Mr. Draheim directly attributed the Prentiss crib's failure to meet the projected sales figures to Child Craft's sales of its competing Model 16961. *See* Def.Exh. V.

While Simmons presented relevant evidence on the issue of confusion by ordinary observers, the incidents recounted are limited in number and not very compelling, particularly in view of the distinct differences between the two designs. Simmons presented no evidence involving broad, neutral customer surveys or any other, more reliable, independently-gathered evidence of customer

confusion. Mr. Conrad testified that a typical customer spends a fairly brief amount of time inspecting hundreds of crib designs, quickly finding one that appeals to her and becoming "locked into" that purchase. *See* Tr. at 277. However, Child Craft presented testimony that "customers tend to get very picky" about choosing a crib design (*see* Tr. at 109), which view is supported by the fact that these cribs are priced in the hundreds of dollars, a considerable amount of money to spend on the basis of only a cursory inspection of the design. While the Federal Circuit has recognized that some purchases may be considered "impulse" buys (*see Braun,* 975 F.2d at 820–821, finding that customers may purchase products impulsively, without differentiating similar designs, if the items are relatively inexpensive, such as a $25 handheld blender), it is implausible that cribs are such an impulse purchase, despite Simmons' assertion to the contrary.

In addition, the sheer volume and array of crib designs in the marketplace, including the wide variety of Shaker-style models, indicates that manufacturers find that customers are extremely conscious of design differences, especially in light of the fact that it is expensive to create and maintain a wide inventory of crib endboards. *See* Tr. at 71–72. William Suvak, Executive Vice–President at Child Craft, testified that Child Craft currently has approximately half a dozen Shaker-style cribs in its inventory, out of a total of approximately 80 designs. *See* Tr. at 71–72. Further, Simmons' assertions regarding retailer replacement and lost sales would require the Court to infer that these losses of floor space and sales are directly attributable to Child Craft's crib and, accordingly, that Child Craft's design is virtually identical. However, these are not necessary or inevitable or the only available inferences, particularly without supporting evidence showing direct replacement by individual retailers. In addition, the Court finds it difficult to infer from Simmons' indirect evidence that

the designs are "virtually identical" when the Court's own comparison reveals distinct differences.

▪ While Simmons has produced evidence suggesting that customers may confuse the patented design and the accused design, that possibility is not compelling enough to change the Court's conclusion that an ordinary purchaser would not find the two substantially similar. Further, while evidence of actual consumer confusion is relevant, the *Gorham* standard involves the "ordinary observer," an objective test. The Court is not limited to considering evidence of actual consumer behavior presented by the parties when the designs themselves are before the Court to compare. "Nothing in Gorham suggests that, in finding design patent infringement, a trier of fact may not as a matter of law rely exclusively or primarily on a visual comparison of the patented design, as well as the device that embodies the design, and the accused device's design." *Braun,* 975 F.2d at 821; *see also Pacific Handy Cutter, Inc. v. Quick Point, Inc.,* 1997 WL 607501 at *4 (C.D.Cal.) ("Evidence relating to consumer confusion would not raise a triable issue of fact" because the court may find infringement or noninfringement by merely comparing the designs (citing *Braun* )).

After comparing the designs and considering the evidence presented regarding customer confusion, the Court finds that, because the accused design presents a readily-distinguishable overall appearance from the '490 patent, the two designs are not substantially similar. There being no substantial similarity, the Court need not address the second prong of infringement, the point of novelty test.[3] Thus, we hold that Child Craft's Model 16961 crib endboard design does not infringe the '490 patent and, accordingly, *grant* Child Craft's request for a declaratory judgment of noninfringement and *deny* Simmons' claim of infringement. In addition, because the Court holds that

---

3. Even if the Court found that the designs are substantially similar, the accused design does not incorporate either the domed cap rail combined with a flat-bottomed intermediate rail or the unique 3–4–3 slat configuration shown in the '490 patent, which are novel ornamental features (as determined in construing the claim of the patent, above). Thus, Child Craft's design does not appropriate the point of novelty of the patented design and the Court's conclusion would be the same.

Child Craft's design does not infringe the '490 patent, it is not necessary to reach the issue of the validity of the patent. Thus, we *deny* as moot Child Craft's request for a finding of invalidity.

### III. CONCLUSION

Plaintiff has sought a declaratory judgment of noninfringement of Defendant's '490 patent or, alternatively, a finding of invalidity of the patent. In turn, Defendant has requested a finding of infringement. For the reasons articulated above, the Court *grants* Plaintiff's request for a declaratory judgment of noninfringement, *denies* as moot Plaintiff's request for a finding of invalidity of the '490 patent and *denies* Defendant's claim for a finding of infringement.