**PURITAN–BENNETT CORPORATION, Mallinckrodt Incorporated, Plaintiffs,**

v.

**PENOX TECHNOLOGIES INCORPORATED!, Essex Industries Incorporated!, Defendants.**

**No. IP02–0762–CM/S.**

United States District Court, S.D. Indiana, Indianapolis Division.

Dec. 4, 2003.

Raymond A. Kurz, Hogan & Hartson, Washington, DC, Robert K. Stanley, Baker & Daniels, Indianapolis, IN, for Plaintiffs.

Keith J. Grady, Lewis Rice & Fingersh, L.C., St Louis, MO, Michael Hickey, Lewis Rice Fingersh, St. Louis, MO, Frank B. Janoski, Lewis Rice & Fingersh, St Louis, MO, John F. Prescott Jr., Ice Miller, Indianapolis, IN, Jay G. Taylor, Ice Miller, Indianapolis, IN, for Defendants.

### ORDER ON CLAIM CONSTRUCTION

MCKINNEY, Chief Judge.

This cause is now before the Court following a hearing held pursuant to the guidance of the Supreme Court's opinion in *Markman v. Westview Inst., Inc.*, 517 U.S. 370, 388–90, 116 S.Ct. 1384, 134 L.Ed.2d 577 (1996) (*"Markman II"*), and the Federal Circuit's opinion in *Markman v. Westview Inst., Inc.*, 52 F.3d 967 (Fed. Cir.1995) (*"Markman I"*). At the hearing, the Court requested that the parties focus their arguments on the points of novelty of the design patent at issue, U.S. Patent Des. No. 437,056 S (" '056 patent"), in order to narrow the construction issues

for the Court. The Court has considered the parties' proffers and is ready to issue its ruling.

## I. DEFENDANTS' MOTION TO STRIKE

The defendants, Penox Technologies, Inc. and Essex Industries, Inc. (collectively, the "Defendants"), have moved to strike exhibits 1 and 2 to the plaintiffs', Puritan–Bennett Corp. and Mallinckrodt, Inc. (collectively, "Plaintiffs"), Reply Memorandum in Support of Their Proposed Claim Construction of U.S. Patent No. Des. 437,056S ("Plaintiffs' Reply"), because those exhibits depict and/or describe the Defendants' accused products. The Defendants have also moved to strike the portions of the Plaintiffs' Reply that discuss these products. The Defendants assert that by providing these references, the "Plaintiffs have improperly asked the Court to construe the sole claim of the '056 design patent by reference to and consideration of the accused device." Def.'s Mot. & Mem. to Strike, at ¶ 6.

In support of their exhibits, the Plaintiffs argue that they never referred to the Defendants' accused products to support their claim construction, they merely use those references to highlight "the impropriety of Defendants' claim construction." Pls.' Mem. in Opp'n, at 2. In addition, the Plaintiffs argue that their exhibits also provide the Court with evidence of alternative designs which "is relevant to claim construction in order to show that a particular feature is ornamental rather than functional." *Id.* at 4 (citing *L.A. Gear, Inc. v. Thom McAn Shoe Co.*, 988 F.2d 1117, 1123 (Fed.Cir.), *cert. denied*, 510 U.S. 908, 114 S.Ct. 291, 126 L.Ed.2d 240 (1993); *Hsin Ten Enter. USA, Inc. v. Clark Enters.*, 149 F.Supp.2d 60, 63 (S.D.N.Y.2001)). Defendants' designs, the Plaintiffs contend, "unequivocally establish alternative

ways to design all, or nearly all, of the prominent features of the product described in the '056 patent, thus refuting Defendants' claims of functionality, i.e., that the functionality of a liquid oxygen unit requires that it (or certain of its features) be designed in the specific way described in the '056 patent." *Id.*

The Court finds that it is improper for the Court to consider the accused device during the claim construction process. *See NeoMagic Corp. v. Trident Microsystems, Inc.,* 287 F.3d 1062, 1074 (Fed.Cir.2002) (citing *SRI, Int'l v. Matsushita Elec. Corp. of Am.,* 775 F.2d 1107, 1118 (Fed.Cir.1985) (*en banc*)). This Court finds that principal particularly true in the design patent context where it is the visual impression of the design that is at issue. However, as suggested by the Plaintiffs, alternative designs may be used to rebut a party's argument that a feature is functional rather than ornamental. *See L.A. Gear, Inc. v. Thom McAn Shoe Co.,* 988 F.2d 1117, 1123 (Fed.Cir.), *cert. denied,* 510 U.S. 908, 114 S.Ct. 291, 126 L.Ed.2d 240 (1993). It is incumbent upon the parties to walk the fine line between submitting materials that are proper and those that are not. While some of the information contained in Plaintiffs' exhibits 1 and 2 is not about the allegedly infringing products, some of the information does discuss the relevant features of the accused designs. At least half of the information contained in exhibit 2 refers to the allegedly infringing product. The Court will not sift through the materials to determine what is admissible for purposes of claim construction and what is not. Therefore, the Court shall not consider exhibits 1 and 2 to the Plaintiffs' Reply, because they contain information about the allegedly infringing product. The Court shall consider exhibit 3 to the

Plaintiffs' Reply, because it contains information about alternative designs that may be relevant to the party's arguments. To the extent that the Plaintiffs' Reply discusses the allegedly infringing designs, the Court shall not consider that information as well.

The Court notes that the Plaintiffs introduced at the hearing several pictures of and/or actual devices that depicted alternative designs. The Court finds that those exhibits are admissible for that purpose and does not consider them part of this motion to strike.

For these reasons, the Defendants' motion to strike is **GRANTED**. The Court shall not consider exhibits 1 and 2 to Plaintiffs' Reply or references to the allegedly infringing design contained in Plaintiffs' Reply in making its claim construction ruling.

## II. *DEFENDANTS' MOTION FOR LEAVE TO FILE EXHIBITS*

■ The Defendants have moved for leave to file two exhibits in support of their claim construction [1] to which the Plaintiffs have taken exception. Defendants' Exhibits X and Y purport to provide background that Defendants' Exhibit T, some pictures of the Invacare/Mobilaire portable liquid oxygen unit ("Invacare/Mobilaire design") shown to the Court during the *Markman* hearing, was a design in the marketplace prior to the '056 patented design. The Plaintiffs contend that during discovery the Defendants never disclosed that they intended to assert the Invacare/Mobilaire design as prior art in this cause. Pls.' Opp'n & Resp. to Defs.' Mot. for Leave to File Exhs., at 1–2. In addition, the Plaintiffs assert, the Defendants had the opportunity to introduce the design during the

---

1. Defendants actually moved to file three exhibits in support of their claim construction argument, however, the plaintiffs have not objected to one of the them, exhibit W.

*Markman* briefing, which occurred prior to the hearing, but chose not to do so. *Id.* at 2. Moreover, the Plaintiffs aver that the Invacare/Mobilaire design is extrinsic evidence, which is improper material for consideration by the Court during claim construction. *Id.* at 2–3. The Plaintiffs argue that the Defendants' introduction of the Invacare/Mobilaire design is belated and, in any event, is irrelevant to the claim construction task before the Court. *Id.* at 3 (citing *Child Craft Indus., Inc. v. Simmons Juvenile Prods. Co.*, 990 F.Supp. 638, 640–41 (S.D.Ind.1998)).

In contrast, the Defendants contend that they timely disclosed the Invacare/Mobilaire design as prior art. The Defendants assert that their answer to Plaintiffs' Interrogatory No. 9, regarding invalidity allegations, included a reference to "prior art produced in this litigation." Defs.' Reply Mem. in Support of Their Mot. for Leave to File Exhs., at 2–3 (citing Pls.' Exh. 1, at 10, Ans. No. 9.23). The Defendants aver that the Plaintiffs produced the relevant pages of exhibit Y during discovery. *Id.* at 2. Moreover, the Defendants assert that they produced exhibit X, a brochure that shows some of the features of the Invacare/Mobilaire design. *Id.* In addition, the Defendant argue that although this prior art is extrinsic to the patent, it is relevant to an understanding of the points of novelty claimed by the Plaintiffs. *Id.* at 3 (citing *Winner Int'l Corp. v. Wolo Mfg. Corp.*, 905 F.2d 375, 376 (Fed.Cir.1990)).

The Court finds that the Plaintiffs are not unduly prejudiced by the Defendants introduction of exhibits X and Y because they knew about the Invacare/Mobilaire design prior to their application for the '056 patent and had fair notice that information they produced regarding prior art designs could be used to challenge the '056 patent by the Defendants' answer

to their interrogatories. Furthermore, the Plaintiffs had adequate notice to fairly distinguish the '056 patented design from that of the Invacare/Mobilaire design at the *Markman* hearing, and in its brief opposing the Defendants' instant motion.

For these reasons, the Defendants' Motion for Leave to File Exhibits is **GRANTED**. However, the Court shall consider arguments presented by the parties opposing and supporting the admission of the documents in rendering its decision on the proper claim construction for the '056 patented design.

## III. *DISCUSSION*

■ Turning now to the claim construction issue at hand, "[t]he patent claim measures the invention." *Sun Hill Indus., Inc. v. Easter Unlimited, Inc.*, 48 F.3d 1193, 1196 (Fed.Cir.1995). Only the novel, ornamental features of the Plaintiffs' patented design are protected. *See OddzOn Prods., Inc. v. Just Toys, Inc.*, 122 F.3d 1396, 1405 (Fed.Cir.1997).

The '056 patent contains one claim that recites: "The ornamental design for a portable gas dispenser, as shown and described." U.S. Design Patent No. D437,-056 S, at Cover (issued Jan. 30, 2001) ("'056 Patent"). Eight figures comprise the "shown and described" design. *Id.* at Sheets 1–6. The figures are appended to this Order as "Appendix 1–6."

## A. FUNCTIONAL ASPECTS OF THE '056 PATENTED DESIGN

■ The design disclosed by the drawings of the '056 patent is complex; therefore, the Court has determined that the best place to start its analysis is with the Defendants' arguments that certain features of the '056 patented design are functional. "[T]he design of a useful article is deemed functional where 'the appearance

of the claimed design is "dictated by" the use or purpose of the article.'" *Rosco, Inc. v. Mirror Lite Co.,* 304 F.3d 1373, 1378 (Fed.Cir.2002) (quoting *L.A. Gear, Inc. v. Thom McAn Shoe Co.,* 988 F.2d 1117, 1123 (Fed.Cir.1993)). However, "[i]f other designs could produce the same or similar functional capabilities, the design of the article in question is likely ornamental, not functional." *Id.*

■ The Defendants argue that several aspects of the handle of the '056 patented design are functional and should not be considered as part of the ornamental design. Those aspects include the fact that there is a handle at all, the fact that the '056 patented design's handle is solid (rather than a strap, for example), and that the handle arches from the back of the design to the front of the design. The Court can only agree with the latter assertion. While it is true that a portable gas dispenser is more easily transported if it has a handle, the fact that there is a handle in the '056 patented design does not in an of itself make that feature functional. Many other designs would facilitate transportability. Likewise, the fact that the '056 patented design's handle is solid and rigid does not make it functional either because the handle could be made from many materials and take many shapes yet still facilitate transportability.

However, as conceded by the Plaintiffs during the *Markman* hearing the arch of the handle over the top of the dispenser to the front is functional. *See* Hrg. Tr. at 19. At the *Markman* hearing Plaintiffs' counsel stated that "[w]hat creates the balance and good center of gravity isn't the fact that it's shaped like this. The center of gravity is the fact that it arches over the middle. We would maintain it is only the arch that is functional to try to give it a center of gravity and balance and, therefore, we would argue that that [sic] is a

functional feature, the arch over the front." *Id.* The Court must agree with the parties that this aspect of the handle, its arch from the back over the top and to the front of the dispenser is functional; that particular configuration balances the dispenser unlike a handle of a different size, shape, configuration or design. The Court does not make this conclusion lightly because the sweep of the handle from the back of the dispenser to half-way across to the front is a prominent feature of the '056 patent drawings. However, as the Plaintiffs conceded, the purpose of the arch over the front is balance, which the Defendants do not dispute. In summary, the Court finds that the arch of the handle from the back of the '056 patented design to half-way across the front is functional, however, the presence of the handle, where it is attached and its shape are not functional aspects of the handle.

■ The second aspect of the '056 patented design that the Defendants challenge on the basis of functionality is the presence of a knob and the location of the knob near the top of the dispenser. The Defendants assert that the location of the knob of the '056 patented design facilitates a user's ability to use the dispenser. Although the Court agrees with the Defendants that the presence of a knob or dial is functional with respect to a portable gas dispenser, the Court cannot agree that the location of the dial in the '056 patented design is functional. There is little argument that the dial regulates the gas flow from the dispenser, however, there is nothing about that function that dictates the size of the regulation piece or its location on the dispenser. In addition, as the Plaintiffs point out, the location of the dial relative to the other design features is not dictated by its function as a method for regulating the flow of gas from the dispenser. The Court finds that the presence

of a dial is function, however, the location of the dial is an ornamental feature of the '056 patented design.

■ The third aspect of the '056 patented design that the Defendants challenge as functional is the fact that the dispenser has slots or vents. The Defendants do not challenge the Plaintiffs' assertion that the placement and orientation of the slots or vents are ornamental. The Plaintiffs do not really disagree with the Defendants' challenge to the slots or vents, although they do challenge the Defendants' construction for that feature of the '056 patented design. The Court agrees with the parties that the presence of slots or vents is functional, but their placement and orientation is ornamental.

■ The fourth aspect of the '056 patented design that the Defendants challenge as functional is the location of the cannula ports or tubular receivers on the front of the dispenser. The Defendants argue that this location is functional because it facilitates the continued straightness of the connection tubes. The Plaintiffs argue that there are many locations for the cannula ports, tubular receivers or connectors that would facilitate maintaining the straightness of the connection tubes. The Court agrees with the Plaintiffs that the location of the cannula ports, tubular receivers or connectors is not functional because there are other locations for the features that would facilitate the same functionality.

■ The fifth aspect of the '056 patented design that the Defendants argue is functional is the concave back of the dispenser. The Defendants assert that the back of the dispenser is concave because it facilitates comfort of the user. However, the Defendants also assert that the slight concavity of the back is part of the proper construction for the '056 patented design.

Defs.' Mem. at 20–21 ("Viewing the dispenser from the top, as shown in Figure 7, ... the slight concavity of the dispenser back can also be seen.... Viewing the dispenser from the bottom, as shown in Figure 8, ... the dispenser discloses ... a slightly concave back ...."). In fact, during the *Markman* hearing, the Defendants particularly pointed out the slight curvature of the back to rebut the Plaintiffs' assertion that the footprint of the dispenser is shaped like a triangle with rounded corners; the Defendants also noted the reason for the concavity of the back. *See* Hrg. Tr. at 32–33. The Plaintiffs assert only that they agree that the back of the dispenser has a slight concavity, but never mention whether or not it is functional. The Court finds that the slight concavity of the back portion of the dispenser is not functional because there are other designs that facilitate comfort for the user, including, but not limited to, the kidney-shaped design proffered by the Defendants as prior art, which is more than slightly concave. Defs.' Exh. D, U.S. Patent Des. No. 372,-529, Aug. 6, 1996.

■ The last aspect of the '056 patented design that the Defendants challenge as functional is the cylindrical nature of the center and two side portions. The Defendants argue that these shapes, which define the whole appearance of the dispenser body, are functional because they conform to the inner parts. Although the Plaintiffs never really addressed this argument in their briefs, at the *Markman* hearing Plaintiffs' counsel argued that the Defendants' claim that the design is functional because it is dictated by the shapes of the inner parts "puts the cart before the horse." Hrg. Tr. at 45. In other words, the Plaintiffs could have rearranged the inner parts to conform to any outer design. *Id.* The Court agrees with the Plaintiffs that the design is not made functional sim-

ply because it closely conforms to the shape of the inner components of the dispenser. The Plaintiffs could have chosen to place the same inner components in a differently designed dispenser, such as a rectangular box with rounded corners and a handle that arched over the top from side-to-side, but they did not. The Plaintiffs chose the '056 patented design to house the inner components. The Court finds that body design of the '056 patent is not functional.

In summary, the Court finds that three aspects of the '056 patented design are functional: (1) the arch of the handle from the back of the dispenser to half-way across the front; (2) the presence of a dial; and (2) the presence of slots or vents.

## B. ORNAMENTAL FEATURES OF THE '056 PATENTED DESIGN

As the Court noted in its remarks to the parties prior to their presentations at the *Markman* hearing, the parties' views on the proper construction for the ornamental features of the portable gas dispenser of the '056 patent are considerably divergent. The Plaintiffs advocate that a broad interpretation of the drawings is possible because there was very little prior art. With that overarching premise, the Plaintiffs suggest that at least seven features of the '056 patented design capture the overall visual impression of the design, including the handle, the body, the dial, the footprint and top view, the vents, the cannula or oxygen/sense connector recessed region and the lever. The Plaintiffs focused on four of these seven at the *Markman* hearing, including the handle, the body, the dial and the connectors.

The Court finds that the Plaintiffs' construction does little to clarify the design because it generalizes each aspect such that designs that do not have the overall appearance of what is claimed would in-

fringe the '056 patent. For example, the Plaintiffs' proffered construction for the dial of the portable gas dispenser reads: "(1) a large, protruding, round and thick-bodied appearance; (2) located in a slightly recessed position at the top of the front face of the dispenser; (3) the profile of which is in relative alignment with front [sic] face of the dispenser below the dial." Pls.' Opening Mem. in Support of Their Proposed Claim Constr. of U.S. Patent No. Des. 437,056S, at 9 (citations to '056 patent omitted) ("Pls.' Opening Mem."). The Plaintiffs argue that "the location, size, and shape of the dial . . . is ornamental." *Id.* But, the Plaintiffs offer no construction for the size of the dial relative to the entire unit, which is an ornamental feature, and they only generalize the shape of the dial, when it appears to have a specific texture and dimension that effect the way the unit looks.

The Defendants' proffered construction is no less troublesome, but for different reasons. The Defendants' proffered construction for the design describes each of the '056 patent's figures in copious detail. For example, the Defendants' construction for the dial reads:

> Directly between the left quarter hemispherical cap and the right stair stepped [sic] recess is a rounded, circular, sculpted recess on the top face of the center cylinder in which sits a round, cylindrical, single-bladed knob. The blade is hourglass-shaped (i.e., slightly concave on both sides) and runs diametrically across the knob, with a width approximately one-third to one-fourth the diameter of the knob. The blade includes two vertical, oblong protrusions at both its ends, while the outer cylindrical surface of the knob includes a series of textured, parallel, oblong, inset ribs.

Defs.' Mem. in Support of Their Proposed Claim Constr. of U.S. Patent Des. No.

437,056S, at 19 ("Defs.' Mem."). With the minute detail of their proposed construction the Defendants have attempted to reduce the drawings that comprise the design into claims, which defeats the purpose of limiting written descriptions in design patents. *See* 37 C.F.R. § 1.153(a) ("No description, other than a reference to the drawing, is ordinarily required . . . .").

As the Court warned the parties at the *Markman* hearing, the Court must reject both parties' constructions. In a design patent case it is incumbent upon the Court to resolve disputes between the parties as to the scope of the patented design. *See OddzOn Prods.*, 122 F.3d at 1405. In doing so, the Court must focus on the design features that give the '056 patented design its overall ornamental visual impression, and identify the non-functional aspects of the design for the jury's consideration. *See id.* This is not an easy task in the present case because the patented design is complex and the Plaintiffs assert that most of the design is nonfunctional and ornamental.

Although the Court has rejected each of the parties' constructions for the '056 patented design's ornamental features, a review of their proffers will inform the Court's discussion. The Plaintiffs assert that the '056 patented design contains the following ornamental features, "alone or in combination:"

1. A design of the body of dispenser [sic] having (1) an arch-shaped top portion, where the curve of the arch follows and flows with the curvature of the round dial positioned on the front face of the dispenser at the top of the dispenser; (2) an elongated vertical orientation with a generally triangular cross-section having rounded angles; (3) a flat base portion with an indented notch at the left underside angle; (4) a protrud-

ing rounded, center front portion; and (5) a relatively flat back portion.

2. A handle having (1) a solid, tubular shape that forms a semi-rectangular opening with rounded corners; (2) arching over the top of the dispenser from one side of the dispenser to the other and spanning the width of the top of the dispenser; and (3) located behind the dial.

3. A dial having (1) a large, protruding, round and thick-bodied appearance; (2) located in a slightly recessed position at the top of the front face of the dispenser; (3) the profile of which is in relative alignment with the front face of the dispenser below the dial.

4. A footprint and top view of the dispenser having (1) an essentially triangular shape with rounded angles (and slightly concave edges where the center front face portion protrudes); (2) the footprint having an indented notch at the left underside angle; and (3) in the top view, the top edge of the dial and the vents on the top of the dispenser being visible.

5. Slit-like vents, arranged in rows, and positioned on the top of the dispenser near the dial, and on the lower portions of the front sides of the dispenser.

6. Oxygen and sense connectors being located in a recessed region on the upper portion of the face of the dispenser body on the right side of the device, the recessed region having areas for two vertically stacked connectors and being symmetrically opposed to a single recessed region on the left side of the dispenser.

7. A vertically oriented lever placed in a recessed region in the back of the

dispenser and towards the right side (as one views from the back).

Adapted from Pls.' Mem., at 13–15. At the *Markman* hearing, the Plaintiffs particularly noted the "body look," Hrg. Tr. at 12, the "footprint," *id.* at 20, "the overall look, the placement and orientation of the knob," *id.* at 16, the placement and orientation of the two connectors, *id.*, the location of the vents, *id.* at 17, the vertical orientation of the lever and the placement of the lever on the body of the design, *id.*, the "flat base portion with an indented notch to the left underside angle," *id.* at 18, and the "relatively flat back portion." *Id.*

As mentioned earlier, the Defendants' assert that the proper construction is much more detailed. Their construction reads:

Viewing the dispenser from the front, as shown in Figures 1 through 3, the principal part of the dispenser body consists of an upright, circular, smooth-surfaced cylindrical portion. On both sides of the center cylinder are offset quarter cylinders extending radially outward from the center cylinder.

On the left bottom side, a shoulder intervenes between the center cylinder and quarter cylinder, rising from the base about one-fifth of the length of the center cylinder. Just to the left bottom side, a shoulder intervenes between the center cylinder and quarter cylinder, rising from the base about one-fifth of the length of the center cylinder. Just to the left and above the shoulder are eleven elongated, horizontal, parallel slots or air vents, extending substantially most of the distance from the back to the front of the quarter cylinder, without crossing over onto the shoulder or the center cylindrical portion, and with six of the slots being shortened since they terminate near the shoulder. The bases

of the left quarter cylinder and shoulder are not coplanar with the center cylinder's base, but are elevated at a diagonal, slightly rising from the shoulder towards the quarter cylinder's back. A circular outlet extends from below the quarter cylinder's base. Just above the horizontal air vents on the left quarter cylinder is the tip of a slight conical indentation which smoothly transitions between the center and quarter cylinders. The conical indentation widens as it moves up the quarter cylinder and terminates just below a round button which is fitted under a quarter hemispherical cap extending out from between the center and quarter cylinders.

On the right bottom side, there is no shoulder or hump between the center cylinder and quarter cylinder. Extending substantially most of the distance from the back to the front of the right quarter cylinder are thirteen elongated, horizontal, parallel slots or air vents, which do not touch the center cylinder. Moreover, the quarter cylinder's base is coplanar with that of the center cylinder. Above the air vents is a stair stepped [sic] recess oriented on a downward diagonal with respect to the vertically oriented dispenser, with two short cannula ports or tubular receivers projecting therefrom, also on the same downward diagonal.

Directly between the left quarter hemispherical cap and the right stair stepped [sic] recess is a rounded, circular, sculpted recess on the top face of the center cylinder in which sits a round, cylindrical, single-bladed knob. The blade is hourglass-shaped (i.e., slightly concave on both sides) and runs diametrically across the knob, with a width approximately one-third to one-fourth the diameter of the knob. The blade includes two vertical, oblong protrusions at both

its ends, while the outer cylindrical surface of the knob includes a series of textured, parallel, oblong, inset ribs.

Above the knob, the top of the center cylinder is slightly arched, with a half-circle indentation appearing just above the knob in the arch, symmetrically in line with the vertical blade of the knob. Eight parallel, horizontal air vents are visible on the surface of the arched portion, with four air vents each on both the left and right center arch portions. The left portion of the center cylinder's arch terminates in another curved smooth shoulder transitioning between the hemispherical cap and the lower left end of a vertically extending mount for the tubular handle. the dispenser handle starts at this mount located on the far left back top of the dispenser, proceeds vertically and almost immediately starts to curve or bend towards the front of the dispenser. The handle then curves to the right, proceedings lengthwise across the dispenser, bends back down along a curve towards a vertically extending mount on the far right back top of the dispenser. The inner space cut out by the handle is a rectangle with sharp right angles in the top two corners and rounded angles in the lower two corners, with the arch of the center cylinder breaking up the rectangle's middle.

Viewing the dispenser from the back, as shown in Figure 4, the handle is clearly a separate piece from the lower back, with two round protrusions on the sides near the handle mountings. At the top of the lower back portion below the handles are two arches, the first outer arch slanted towards the front of the dispenser, and the second inner arch offset and protruding upward. The outer arch includes two slight indentations on the left and right sides along the perimeter, with two small vertical rectangles located be-

low these indentations. Just to the right of the right rectangle is the top of a vertical, spoon-like lever, extending almost halfway down the lower portion of the dispenser back, with a cupped portion (with three diagonal ribs across its upper right hand corner) towards the top and an elongated handle extending downward. The spoon lever sits in a recessed portion of the dispenser back conforming to its spoon-like shape.

Viewing the dispenser from the sides, as shown in Figures 5 and 6, the forward curve of the handle traces a quarter-circle arc, moving from the back of the dispenser up towards the front and ending just short of the knob's rear. The handle's width is about one-third that of the dispenser's side width. The recess for the front knob traces a sharp quarter-oval curve towards the front of the center cylinder. Also the air vents on the top arch of the center cylinder are located at or behind the stair-stepped recess for the two cannula ports.

Viewing the dispenser from the top, as shown in Figure 7, the forward bend of the handle is illustrated, such that all eight horizontal air vents on the top of the dispenser can be viewed without obstruction. Moreover, the slight concavity of the dispenser back can also be seen, with an inset portion at the center back for the outer arch.

Viewing the dispenser from the bottom, as shown in Figure 8, the dispenser discloses a center cylindrical portion, quarter cylinder portions extending radially out on the left and right, a shoulder portion, between the center cylinder and the left quarter cylinder, and a slightly concave back. The circular outlet is seen in the lower left quarter cylinder portion. The hemispheric cap between the center and left quarter cylinders is apparent, as is the protruding

handle on the right hand side, between the center and quarter cylinders. Defs.' Mem., at 19–21. At the *Markman* hearing, the Defendants particularly noted the orientation and design of the handle as it expands across the design, Hrg. Tr. at 31–32, the location of and the recessed ribbing of the knob, *id.* at 32, the slight curvature to the back, *id.,* the unusual footprint that resembles the profile of a Volkswagen "Bug" vehicle, *id.* at 33, and the vertical spoon-shaped lever with a recess that conforms to that shape on the backside of the design, *id.* at 34.

Although both parties seem to agree that the Court must look at the totality of the design, both parties obscure the overall image of the design by focusing on details first. The Court finds that the better approach in this case is to focus on the overall image first and then refine that image with the details that make the design unique. Figure 3 of the '056 patent shows the front of the patented design. From this view the most striking feature of the '056 patented design is evident: a center Roman arch, or rounded arch, at the top and center of which sits a rather large dial. Two partial arches, with slightly larger radii than the center arch and with a shorter height, flank the center arch and contribute to focusing attention upon the dial. In addition, a rather thick, squared, solid handle that appears to grow from the outer portions of the two partial arches, forms a rectangular arch over the center Roman arch and creates an opening between itself and the top of the center Roman arch, which creates a frame for the top of the center arch in which sits the rather large dial. The rather large dial has a center hour-glassed shaped flange that adds to the bulky look of the dial design.

Other features of the design that are evident from the front view of the '056 patent drawings include a column of horizontal vents on each of the two partial arches that start at the base of each arch and continue approximately halfway up each arch base. Although much of the design is symmetrical on its face, it is at this point that its asymmetry becomes apparent. The vents in the bottom half of the column of vents on the left partial-arch base are cut short by a notch that is cut out of the junction of the center Roman arch portion and the left partial-arched portion. Also on the left partial-arched portion, but at the top, is an extra shoulder that extends out from the junction of the left partial-arched portion and the center Roman arched portion. At the top of the right partial-arched portion two connectors are nestled in a reverse stair-stepped cut-out that slant downward.

Vents are also prominent on the top of the center Roman arched portion, as shown in Figure 7. There are two rows of vents on either side of the center Roman arched portion, leaving the top of the center Roman arched portion smooth.

The '056 patented design also has a particular dimension. The footprint of the design, as pictured in Figure 8, best describes the overall dimension and is shaped like profile of a Volkswagen Beetle or "Bug" with a slightly concave base, where the base is the back of the dispenser design, the roof curve outlines the base of the center Roman arch portion, the front end curve outlines the base of the right partial-arched portion and the rear end curve outlines the base of the left partial-arched portion. Other than the variations in this dimension previously and further described, these shapes are fairly maintained to the tops of the arched portions.

Figure 1 of the '056 patent depicts another feature of the design that also serves to highlight the rather large dial that sits

atop of the center Roman arch portion. There is a gently curved recess at the top of that portion in which the rather large dial is positioned vertically. The outer surface of the dial, as opposed to its face described earlier, has ribs that run from the back of the dial to the front and cover that outer surface.

Finally, looking at the back of the dispenser design of the '056 patent, as shown in Figure 4, the top of the center Roman arch is visible beneath the rectangularly-arched handle. In addition, a spoon-shaped lever is placed vertically in a recessed region on the right upper portion of the back.

The Court finds that further construction would only obfuscate the ornamental features that provide the overall visual impression of the '056 patented design.

## IV. CONCLUSION

For the foregoing reasons, the defendants', Penox Technologies, Inc. and Essex Industries, Inc., Motion to Strike is **GRANTED**. Furthermore, the defendants', Penox Technologies, Inc. and Essex Industries, Inc. Motion to File Exhibits is **GRANTED**. The Court has not adopted either parties' construction for the patent in suit, U.S. Patent Des. No. 437,056S, but has adopted a construction that comports with the mandates of the Federal Circuit Court of Appeals and is described at the end of the Discussion section of this Order.